Arthur KNIGHT, a minor under the age of 21 years, by his mother, Mildred Knight; Oscar Gonzalus, a minor under the age of 21 years, by his mother, Esperanza Martinez; Altamese Washington, a minor under the age of 21 years, by her mother, Altamese Washington; Marcine Chestnut, a minor, under the age of 21 years, by her mother, Lora May Chestnut; Willie Chestnut, a minor under the age of 21 years, by his mother, Lora May Chestnut; Joel Barry Shiggs, a minor under the age of 21 years, by his mother, Louise Gaskin; Jacqueline Andrews, a minor under the age of 21 years, by her mother, Essie Andrews: on behalf of each and on behalf of all others similarly situated, more specifically all students dismissed from Franklin K. Lane High School on or about January 27, 1969, Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY OF NEW YORK; Morton H. Selub, Principal, Franklin K. Lane High School; Edwin Dannen, District Supervisor, East New York High School District; Elizabeth C. O'Daly, District Superintendent, District 19; Dr. Bernard Donovan, Superintendent of Schools of the City of New York; and John Doar, President of the Board of Education of the City of New York, Defendants.

No. 69–C–326.

United States District Court
E. D. New York.

April 21, 1969.

See also 48 F.R.D. 115.

Burt Neuborne, New York City, New York Civil Liberties Union, Leah Marks, New York City, Citizens Committee for Children, for plaintiffs.

J. Lee Rankin, Corp. Counsel of City of New York, New York City, for defendants, Robert E. Hugh, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This is a class action against the Board of Education of the City of New York and some of its officials by the seven named plaintiffs individually and on behalf of hundreds of fellow students allegedly dismissed from Franklin K. Lane High School on January 27, 1969. Two months after the event, March 28, the complaint was filed. It was not until April 17th that a proposed order was presented to this Court directing the defendants to show cause why a temporary injunction should not issue requiring the immediate readmission of these students. On request of the attorneys for the plaintiffs the order is not returnable until April 25, three months after the class was allegedly expelled. By telegram to counsel and individual de- fendants, the Court, on its own motion, ordered an appearance in Court at 9:00 A.M. today, Monday, April 21, for a conference pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Allegations in the complaint and motion papers make out a prima facie failure by defendants to comply with elementary concepts of equal protection and due process in denying one of the necessities of our society—a sound high school education, important both for its own value and as a predicate for college. Defendants deny the charge, asserting that no students have been dismissed, that the school system has been, and is, making a determined and good faith attempt to provide meaningful education for all members of the class who wish it; and that it is providing intensive rehabilitative training and guidance to those members of the class, deficient in scholarship and delinquent in attendance, who are willing to prepare themselves to benefit from regular and full day-time high school attendance. The following statement of facts, except where specifically indicated, is based upon plaintiffs' contentions—strenuously controverted by defendants—and is intended only for purposes of the preliminary determinations made in this memorandum and order.

Franklin K. Lane High School (Lane) is an academic high school operated by the New York City Board of Education. On January 27, 1969, a total of 670 students were expelled from that school. Of this number, 412 were 17 years of age on April 1, 1969. Most of these 17-year olds have been discharged from the New York City Public School System and are presently receiving no public education; 258, who are under 17, were transferred to the jurisdiction of the Bureau of Attendance, an agency of the Board of Education. Many of those under 17 years of age are presently receiving instruction at an "annex" to Lane. This "annex" is inferior to Lane in physical facilities and educational exposure; it

operates only three hours per day; no homework, examinations or grades are given.

It is the defendants' contention that approximately 600 students were involved; that each of them and their parents were contacted through a number of letters; and that many of the others were seen in repeated personal visits and interviews. Defendants submit that 165 students, who are over the age of 17, were voluntarily withdrawn from the school at the request of their parents; that 50 could not be located by mail or personal visitations although attempts are still being made to locate them; that 18 have returned to full-time instruction at Lane; that 70 are attending an annex of Lane where they are receiving intensive personal instruction in order to prepare them for full academic work at Lane; that 44, who are over 17, are now attending night high school; that 139, who are over 17, are still being investigated by the Bureau of Attendance although each has already received two letters and one visit; and that 112, who are under 17, are still being investigated, although each has already received two letters and one visit.

Plaintiffs assert that the only reason for this mass expulsion was the desire to relieve overcrowded conditions. No other high school in the City has found it necessary to embark upon a similar course. In effectuating the plan to relieve overcrowding, the following criteria were embodied in a mechanical rule: all students absent 30 days or more during the present school year and who had maintained an unsatisfactory academic record in the Autumn, 1968 semester, were to be dismissed from Lane.

Allegedly, no procedures were established to challenge the criteria or their application. No opportunity to adduce any mitigating circumstances or to appeal the decisions of the administrators was provided.

Among the seven named plaintiffs, the criteria were applied without regard to specific circumstances, and in a non-uniform manner. In several instances, the administrators of this program failed to adhere to their own criteria:

(1) Plaintiff Oscar Gonzalus had been absent less than 30 days in the Autumn, 1968 semester;

(2) Plaintiff Marcine Chestnut had maintained a satisfactory academic record during the Autumn, 1968 semester;

(3) Plaintiff Altamese Washington had maintained a satisfactory academic record, and had been absent less than 30 days during the Autumn, 1968 semester.

In addition, there was at least one instance in which the administrators of the program failed to take into account mitigating circumstances: Plaintiff Arthur Knight was absent from Franklin K. Lane High School for the entire Autumn, 1968 semester because of a kidney ailment.

Three named plaintiffs meet the criteria and offer no mitigating circumstances. Plaintiffs Willie Chestnut, Joel Barry Shiggs, and Jacqueline Andrews did experience academic difficulties during the Autumn, 1968 semester, and each was absent for more than 30 days during that period.

Plaintiffs Knight and Shiggs are the only named plaintiffs under the age of 17; both are assigned to the "annex." Five of the named plaintiffs are above the age of 17. Of these, four are presently receiving no public education. Plaintiff Washington, a 17-year old senior, was readmitted to Lane on March 12, 1969. Her eligibility for June, 1969 graduation is now in doubt because of schooling she lost during her exclusion.

Plaintiffs allege that the Autumn, 1968 semester is not an appropriate time period to use in formulating criteria designed to measure desire for an education. During that semester there was a series of City-wide strikes by public school teachers; a disruptive student boycott of Lane; and disputes in several

schools, among them Lane, about the propriety of establishing additional class days to compensate for those lost during the City-wide teachers' strike. Absences on "make-up" days were counted as absences on students' attendance records. During the Fall of 1968 there was also a severe influenza epidemic resulting in a large number of justifiable absences.

### CONSTITUTIONAL CLAIMS

This Court has jurisdiction to consider the questions raised, and to award the relief sought. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983.

■■ Children have a right to due process and equal protection under the Constitution. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Breen v. Kahl, 296 F.Supp. 902 (D.Wis.1969). The right to attend a public school may not be denied without due process. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967); Madera v. Board of Education of the City of New York, 386 F.2d 778, 784 (2d Cir. 1967).

■ Constitutional requirements of due process in the administration of public school systems are violated by the expulsion of students without affording them an opportunity for a hearing. Madera v. Board of Education of the City of New York, 386 F.2d 778, 784 (2d Cir. 1967); Knight v. Board of Education, 200 F.Supp. 174 (M.D.Tenn.1961).

Even if the criteria for expulsion were valid, lack of procedural due process, it is alleged, resulted in misapplication of the standards used. In the case of three of the named plaintiffs an opportunity to be heard might have revealed that they did not come within even the letter of the expulsion criteria; a fourth named plaintiff might well have been able to show that strict application of the guidelines would have been unjustified.

■ Once a state undertakes to provide free public education, it may not arbitrarily discriminate among its citizens in making it available. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); James v. Almond, 170 F.Supp. 331 (E.D.Va. 1959), app. dism., 359 U.S. 1006, 79 S.Ct. 1146, 3 L.Ed.2d 987 (1960). New York State has assumed the task of providing free education to all those between the ages of five and 21 who wish to take advantage of the opportunity; attendance in New York City is compulsory between the ages of seven and 16. N.Y. Education Law, McKinney's Consol. Laws, c. 16, §§ 3202, 3205.

Beyond the issue of procedural due process, the facts alleged by the plaintiffs strongly suggest that hundreds of high school students may have been discriminated against by being denied the opportunity to obtain the free public education that is extended to other school-age youths in New York City. Some rational basis justifying this discrimination must be shown by the state. Hobson v. Hansen, 269 F.Supp. 401, 426, 429 (D.D.C.1967). None has yet been offered except that this action was taken to prevent overcrowding. Yet, other schools in New York City are apparently at least equally overcrowded. With the expulsion of these students, Lane has become only the second of all New York City's high schools which do not require the scheduling of "multiple sessions" to meet the demands of large numbers of students. Such discrimination, if it is proven—especially when no effective alternate educational opportunity is provided—must be considered invidious, and in violation of the requirements of the Equal Protection Clause of the Fourteenth Amendment.

The question of whether a case has been stated for a constitutionally pro-

hibited discrimination within Lane between those students who have been retained and those who have been expelled, is closer. If it were really necessary to take such a drastic step to relieve overcrowding, it would be difficult to classify as unreasonable, arbitrary, or capricious a determination that only those who may benefit the most and who have shown the greatest interest may continue.

If, however, a determination based upon interest is made, it must be made in a reasonable manner and upon reasonable premises. The facts upon which the distinction has been based cannot be said, at this stage of the litigation, to be of unquestionable relevance. The disruptions that took place during the Fall period—a fact of which this Court must take judicial notice—were hardly conducive to the development of typical academic performances. Since the choice of a period upon which to base the figures which formed the criteria for expulsion may have been constitutionally irrational, productive of untypical and distorted results, the actions of the school authorities may have resulted in an invidious discrimination in violation of the Fourteenth Amendment guarantees of equal protection.

▪ In sum, in addition to the legal problems created by the alleged denial of due process to those students who allegedly have been expelled, there are questions of denial of equal protection raised by the action of the school authorities. Serious questions arise on two levels. First, has the action of the Board of Education resulted in an arbitrary and forbidden discrimination between the students at Lane and the students of other high schools in the City of New York? Second, has there been an invidious discrimination within Lane, between those students expelled and those continued as pupils? Plaintiffs have asserted a valid cause of action entitling them to immediate consideration of their claim that unless this Court acts at once they will be seriously harmed by denial of their constitutional rights.

## REMEDY

The need for dispatch in this case cannot be questioned. While no criticism of the attorneys representing individual plaintiffs is intended, the fact remains that it is claimed that all but one plaintiff have been effectively denied an education for three months. A two month delay elapsed before action was commenced in this Court, and a preliminary injunction was not sought for over three weeks after the complaint was filed.

Education is a necessary and vital aspect of modern life, and delay in protecting the rights of these students can be personally disastrous to them. The loss of time will be especially dangerous for those in their junior and senior years whose opportunity to be admitted to college may be affected.

This is a class action. In such an action the Court has the power and obligation to require "for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct. * * *." Rules of Civil Procedure, Rule 23(d) (2) Such notice is normally designed to permit each member of the class to determine whether he wishes to be individually represented for the protection of his interests. But the power granted under Rule 23 is broad enough to permit the Court to take other action to protect the class, particularly where a preliminary injunction or temporary restraining order is sought and where failure to act prior to resolution of the entire dispute may irreparably harm some but not all members of the class. "Notice to members of the class, whenever employed under amended Rule 23 should be accommodated to the particular purpose. * * *". Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 107 (1966) (Advisory Committee Note to Rule 23(d) (2)).

In this case it is particularly important for the Court to know the scope of the problem and the number of members of the class who are genuinely interested in continuing their education so that it can take appropriate steps to protect them. If several hundred must be readmitted at once, for example, masters to conduct hearings may be required.

Accordingly, the following letter and questionnaire are being sent today to each member of the class:

### UNITED STATES DISTRICT COURT
#### EASTERN DISTRICT OF NEW YORK
#### BROOKLYN, NEW YORK 11201

Chambers of
JACK B. WEINSTEIN
District Judge

April 21, 1969

Re: Arthur Knight, et al. v. Board of Education, et al. 69–C–326

Dear Sir or Madam:

It has been reported to the Court that your connection with Franklin K. Lane High School was terminated on January 27, 1969 without your consent. An action has been brought by seven students on their own behalf and on behalf of all discharged students, including you.

It is important for the Court to know as promptly as possible your position in connection with this litigation since a hearing has been scheduled with respect to plaintiffs' motion to compel your immediate readmission to Franklin K. Lane High School. The matter will be heard shortly.

Please complete and return the enclosed questionnaire at once so that this Court will be assisted in conducting this litigation as promptly and as expeditiously as possible. Use the enclosed self-addressed envelope. No postage is necessary.

Yours truly,

/S/ JACK B. WEINSTEIN
Judge, United States District Court

Re: Arthur Knight, et al. v. Board of Education, et al. 69–C–326

Questionnaire to be returned immediately

to the United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your answers do not obligate you legally. They are intended only to assist the Court in estimating the extent and nature of the problem.

1. Has your position as a student at Franklin K. Lane High School been terminated without your request or consent?

   Yes ———— No ———— (check one only)

2. Are you presently attending full-time high school classes?

   Yes ———— No ———— (check one only)

3. If your answer to question 2 is "No," do not answer this question. If your answer to question 2 is "Yes," state where you are attending high school and the session and type of courses being taken. ————————————

4. Are you presently employed full-time?

Yes _____ No _____ (check one only)

5. State your age and date of birth. _____

6. Do you wish to return to Franklin K. Lane High School as a full-time student carrying a full academic load, assuming responsibility for attendance and academic work and discipline in accordance with regulations of the Board of Education of the City of New York?

Yes _____ No _____ (check one only)

7. Do you wish to be represented in the action by the attorneys for the seven plaintiffs who brought the action, without charge or expense to you?

Yes _____ No _____ (check one only)

8. If your answer to question 7 is "Yes," do not answer this question. If your answer to question 7 is "No," do you wish the Court to appoint an attorney for you who will serve without fee?

Yes _____ No _____ (check one only)

9. Where can you be reached most quickly?

Day:      Address _____

          Telephone Number _____

Evening: Address _____

          Telephone Number _____

10. What statement do you wish to make to the Court in assisting it to decide this case? You may use the back of this questionnaire for additional comments. _____

_____

_____

_____

It is important that this form be returned at once in the enclosed self-addressed envelope.

_____
(Print your name)

_____
(Print your home address)

_____
(Sign your name)

_____
(Signature of Parent or Guardian)

————————◆————————

The Board of Education will address and post these letters today using franked envelopes supplied by the Court.

So ordered.