It is stated in Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 at 500 as follows:

R. R., Appellant,

v.

The STATE of Texas, Appellee.

No. 14819.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 19, 1969.

Rehearing Denied Dec. 17, 1969.

Richard E. Glaser, John L. Sanders, San Antonio, for appellant.

James E. Barlow, Sparta Bitsis, San Antonio, for appellee.

CADENA, Justice.

Appellant, a boy aged sixteen, was adjudged a delinquent child and, as author-ized by applicable statutes,[1] has been committed to the State training school for boys for an indefinite term not extending beyond the period of his minority. Since he faces confinement for a period in excess of five years for hurling an object through the windshield of an automobile belonging to another, causing damage in the amount of $7.88, and since an adult guilty of the same act could not, under the provisions of Article 1350, Tex.Rev. P.C.Ann., be confined for a period of more than one year, appellant asserts that he has been deprived of his liberty without due process of law, that he has been denied the equal protection of the laws, and that he has been subjected to cruel and unusual punishment.

Since all of appellant's objections to the validity of our juvenile scheme, other than the contention relating to cruel and unusual punishment, were considered at length by this Court and rejected in Smith v. State, 444 S.W.2d 941 (1969, application for writ of error pending), we shall limit ourselves to a consideration of the question of cruel and unusual punishment.

Both the Eighth Amendment to the Constitution of the United States and Article I, Section 13 of the Texas Constitution, Vernon's Ann.St., prohibit, in identical language, the requirement of excessive bail, the imposition of excessive fines, and the infliction of cruel and unusual punishment.[2]

For the purposes of this opinion, we assume that, as appellant contends, a penalty may run afoul of the constitutional prohibition if it is excessive and that, implicit in this principle is the notion that the prohibition against cruel and un-

1. Article 2338–1, Sec. 13(c) ; Article 5143d, Sections 12, 31. Both references are to Tex.Rev.Civ.Stat.Ann.

2. In Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the United States Supreme Court regarded as established that the Fourteenth Amendment made the Eighth Amendment applicable to the states.

usual punishment requires that punishment should be proportioned to the crime.[3]

But even if we accept appellant's basic contentions as true, they would be relevant only in cases involving punishment for crime. Appellant, relying heavily on the language in Kent v. United States,[4] and the general indictment of the juvenile court in In re Gault,[5] takes the position that the confinement of a delinquent child must be viewed as "punishment" for the purpose of determining the child's rights under the Eighth Amendment, even though the language of our juvenile statutes speaks in terms of treatment rather than punishment.

The record before us contains no evidence concerning the conditions at the state training schools or the facilities available at such institutions for the re-

---

3. There are indications that at the time the Eighth Amendment was adopted it was understood as prohibiting only the horrors of the Stuart period during which punishments such as pillorying, disemboweling, decapitation and drawing and quartering were not uncommon. See the dissenting opinion in Weems v. United States, 217 U.S. 349, 389–400, 30 S.Ct. 544, 54 L.Ed. 793 (1910). That is, many assumed that the prohibition was aimed only at cruel *methods* of punishment. During the nineteenth century we find expressions to the effect that the prohibition was obsolete as being aimed only at barbaric practices which had passed into oblivion. Hobbs v. State, 133 Ind. 404, 32 N.E. 1019, 1021 (1893).

It was seemingly accepted that only punishment which was both cruel and unusual was prohibited. Thus, although electrocution, when it was first introduced as a method of executing the death sentence, was "unusual" in the sense of being a novel method, it was held to be a reasonable method of inflicting capital punishment and not in itself violative of the constitutional interdiction. In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). There is also authority to the effect that the purpose of the provision was the provision of "unnecessary" cruelty and pain. Wilkerson v. Utah, 99 U.S. 130, 136, 25 L.Ed. 345 (1878). But there is recent authority in support of the view that, even though the penalty involves no physical pain, it may be prohibited because of the method of punishment. In Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), three members of the majority joined with Mr. Chief Justice Warren in an opinion which stated that deprivation of citizenship was cruel and unusual punishment for wartime desertion, classifying it as "a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development."

Most of the nineteenth century decisions rejected the notion that excessive punishment by means of standard methods could be classified as cruel and unusual. These decisions are discussed in the dissenting opinion in Weems v. United States, *supra*, 217 U.S. at 401–409, 30 S.Ct. 544. Some courts held that no punishment within the limits authorized by the legislature could be considered cruel and unusual. Note, the Effectiveness of the Eighth Amendment: An Appraisal of Cruel and Unusual Punishment, 36 N.Y.U.L.Rev. 846, 852 n. 38 (1961). This reasoning was used by the Delaware court to support its conclusion that whipping is not a prohibited form of punishment. State v. Cannon, Del., 190 A.2d 514 (1963). Generally, only those sentences which were so excessive as to shock the moral sense of reasonable men ran the risk of judicial condemnation. See Fellman, The Defendant's Rights 207–208 (1958), for a representative list of sentences which have been sustained, or condemned, in the face of a claim of cruel and unusual punishment.

But at least one member of the Supreme Court during the last century believed that the Eighth Amendment prohibited excessive punishment. See the dissenting opinion of Mr. Justice Field in O'Neil v. Vermont, 144 U.S. 323, 340, 12 S.Ct. 693, 36 L.Ed. 450 (1892). Apparently, the first Supreme Court decision invalidating a penalty as unconstitutionally cruel and unusual is Weems v. United States, 217 U.S. 349, 30 S.Ct. 544 (1910). In Weems we also find the statement that it is a "precept of justice that punishment for crime should be graduated and proportioned to offense."

See, generally, Note, 79 Harv.L.Rev. 635 (1966), from which most of the above summary was taken.

4. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

5. 387 U.S 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

habilitation of youthful offenders. In the absence of evidence that the dismal picture painted in Gault reflects the conditions in the institutions of this State, and giving due consideration to the legislative declaration of policy and purpose, "we are not prepared to condemn out of hand the Texas Youth Council, the juvenile judges, and other trained people working in the field."[6]

The judgment of the trial court is affirmed.

6. State v. Santana, 444 S.W.2d 614 (Tex. Sup.1969). See also Smith v. State, 444 S.W.2d 941, 947–948 (Tex.Civ.App.— San Antonio 1969, application for writ of error pending).