In the Matter of
**KENNETH BROWN, a Minor**
**KENNETH BROWN, Appellant**

No. 17,997

United States Court of Appeals

Third Circuit

Argued January 26, 1970

*See 7 V.I. 545*

Reargued En Banc October 13, 1970

Decided February 23, 1971

*See, also, 439 F.2d 47*

JOHN D. MARSH, ESQ., Christiansted, St. Croix, V.I., *for appellant*

WILLIAM H. BROWN, ESQ., Assistant Attorney General, Christiansted, St. Croix, V.I., *for appellee*

Argued before HASTIE, *Chief Judge*, GANEY and STAHL, *Circuit Judges*

Reargued before HASTIE, *Chief Judge*, GANEY, FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS and GIBBONS, *Circuit Judges*

### OPINION OF THE COURT

FREEDMAN, *Circuit Judge*

The Juvenile and Domestic Relations Division of the Municipal Court of the Virgin Islands found that Kenneth Brown, a 14-year-old juvenile, had violated the Virgin Islands statute against petit larceny and committed him to the Department of Social Welfare of the Virgin Islands until he should attain the age of 18 years. The District Court denied his petition for leave to appeal and its action is before us for review.

### I.

On September 22, 1968, Claude Mahon, the complaining witness, on returning from a swim at Pelican Cove, St. Croix, noticed that his wallet had disappeared from the trousers he had left in his automobile. In an immediate search for the culprit, two of Mahon's companions encountered Kenneth Brown near the beach. After some questioning they searched him and discovered a ten dollar bill and two one dollar bills in his pocket, the same denominations as those missing from Mahon's wallet. They elicited the statement from Brown that he had obtained the money from two other boys. Accompanied by Mahon, who had by now rejoined them, they took Brown to the police. The police refrained from any questioning until the arrival of Brown's uncle, whom they had summoned. Before they began their questioning the police advised Brown of his right to remain silent and to have an attorney, but they failed to warn him that any statements he might make

.315

could be used against him. The trial judge later found that Brown had been "substantially told of his rights."

Brown was thereafter charged with petit larceny in violation of 14 V.I. Code § 1084.[1] He was tried before the Juvenile and Domestic Relations Division of the Municipal Court, where he was represented by court-appointed counsel. At the close of the government's case and again at the conclusion of the trial, defendant's counsel moved for dismissal on the ground that the government had failed to prove the charge beyond a reasonable doubt. The trial judge found defendant guilty in circumstances which make it uncertain that he applied the standard of proof beyond a reasonable doubt.[2]

---

[1] 14 V.I. Code provides:
 "1083. Grand larceny
 "Whoever takes property—·
  "(1) which is of $100 or more in value; or
  "(2) from the person of another—commits grand larceny and shall be imprisoned for not more than 10 years.
 "§ 1084. Petit larceny
  "Whoever commits larceny under any other circumstances is guilty of petit larceny and shall be fined not more than $200 or imprisoned not more than 1 year, or both."

[2] "The Court: Ready for the defendant's side of the case, Mr. Marsh.
 "Mr. Marsh: At this time, after the government rests, the defendant moves to dismiss the charge against the defendant on the ground that it has not been proven beyond a reasonable doubt, the charge that he did willfully steal and carry away $12 in cash.
 "The Court: It doesn't have to be beyond a reasonable doubt. You mean a prima facie case.
 "Mr. Marsh: No sir, beyond a reasonable doubt.
 "The Court: At the end of the Government's case it has to be beyond a reasonable doubt? That's—
 "Mr. Marsh: I submit we are not required to put on any proof until they have proven a case beyond a reasonable doubt.
 "The Court: You don't go ahead until they have proven a case beyond a reasonable doubt? That's new law to me, Mr. Marsh. I don't know when it was passed.
            *       *       *
 "Mr. Marsh: . . . I respectfully submit there's insufficient evidence to put the defendant to his proof.
 "The Court: If there's any testimony we'll have it after lunch.
            *       *       *
 "Mr. Marsh: Defendant offers no testimony.
 "The Court: All right, gentlemen, do you want to argue or submit?
 "Mr. Ellison: The Government submits, your Honor.
 "Mr. Marsh: I think I covered by argument in my motion.
 "The Court: I would think so.
 "The court finds the defendant guilty as charged of having stolen this money as described in the complaint from the pocket of Claude Mahon."

Defendant petitioned the District Court for leave to appeal from the judgment of guilt and commitment thereon, claiming that the evidence before the Municipal Court was inadequate to establish his guilt beyond a reasonable doubt and that the statements and other evidence taken from him were obtained without adequate notice of his constitutional rights. The petition was filed pursuant to 4 V.I. Code § 33, which in general authorizes appeals from the Municipal Court to the District Court as of right but requires that in juvenile and domestic relations cases "they may be taken only if specially allowed by the district court."[3]

The District Court denied the petition for leave to appeal and a subsequent petition for rehearing in which for the first time defendant called attention to the recent decision of In re Gault, 387 U.S. 1 (1967), which he claimed required a mandatory appeal as a matter of due process.

## II.

■■ Defendant contends that it was an abuse of discretion for the District Court to deny him leave to appeal in view of his serious claims of the insufficiency of the evidence against him, the inadmissibility of his statements and the evidence seized, and the failure to apply the standard of proof of guilt beyond a reasonable doubt. The District Court gave no reasons for its denial of leave to appeal, and we therefore are without knowledge of the considera-

---

[3] The full provision reads:

"The District Court has appellate jurisdiction to review the judgments and orders of the Municipal Court in all civil cases, in all juvenile and domestic relations cases, and in all criminal cases in which the defendant has been convicted, other than on a plea of guilty. Appeals in civil, juvenile and domestic relations cases may be taken by the party aggrieved by the judgment or order appealed from, but in juvenile and domestic relations cases they may be taken only if specially allowed by the district court."

tions which it must have believed outweighed these serious claims, the last of which was later vindicated on due process grounds in In re Winship, 397 U.S. 358 (1970). Were we now required to decide whether the District Court abused its discretion, a remand would be necessary in order to obtain a statement of the reasons for its action.[4]

There is, however, a more fundamental issue than the narrow question whether there was an abuse of discretion. It is whether the statutory provision on which the District Court undertook to exercise discretion violates the Bill of Rights contained in § 3 of the Revised Organic Act of the Virgin Islands.[5] Although the Bill of Rights is conferred by act of Congress, it expresses the congressional intention to make the federal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory.[6] A claim of violation of the Bill of Rights, therefore, amounts in substance to a claim of unconstitutionality, which ordinarily is reached only if a case cannot otherwise be decided. Here, however, there are considerations which compel a decision even if the issue is treated as a constitutional one. The issue has been fully argued. A decision now which is limited to the question of abuse of discretion may bring the issue to us again in this very case. The issue is a recurrent one in general, and the District Court should not continue to engage in the delicate and often difficult function of exercising its discretion if such appeals are as of right and it has no discretion to deny them. Its function would be deranged if it were overhung by the threat if invalidity of the statutory provision, a threat which could be brought into the forefront only where leave to appeal was denied. For these important practical considerations, which affect the proper adminis-

---

[4] Cf. Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1970).

[5] 1 V.I. Code Annot. p. 92, quoted infra, n. 9.

[6] See infra, n. 9.

tration of justice[7] and in the exercise of our supervisory jurisdiction over the courts of the Virgin Islands,[8] we consider the validity of the statutory provision.

## III.

We therefore turn to the claim that the statutory provision violates defendant's right to the equal protection of the laws guaranteed to him by § 3 of the Revised Organic Act of the Virgin Islands,[9] because it permits appeal to the District Court from judgments and orders of the Municipal Court in juvenile and domestic relations cases only when specially allowed by the District Court while the right of appeal is absolute in all other cases, civil and criminal.[10]

■ However unusual it may seem to minds accustomed to the almost unlimited availability of appeals, it has been held that due process does not require the right to appellate review.[11] Once it is extended, however, there may not be

---

[7] See Commonwealth v. Gilfedder, 321 Mass. 355, 357, 72 N.E.2d 241, 242 (1947): "The issue of constitutionality has been fully argued. . . . [I]t would certainly arise again in the near future. . . . In these circumstances it seems our duty in the interest of . . . the public to deal with the fundamental issue."
  Sarlls v. State, 201 Ind. 88, 93, 166 N.E. 270, 275 (1929):
  "It is true that this case can be decided without going into the constitutional questions, but we believe that the merits of the controversy before us cannot be completely determined without a consideration of such questions. The constitutional questions have been exhaustively briefed by both parties, and in view of their manifest public importance, of the fact that an ultimate decision of them must some time be arrived at in this court, and of the holding of our own court that a public officer cannot be compelled to obey a statute that is unconstitutional, even when he is sued in mandamus. . . ." See also 16 C.J.S. Constitutional Law § 94, n. 62 and cases cited therein.

[8] Government of the Virgin Islands v. Lovell, 6 V.I. 422, 378 F.2d 799 (3 Cir. 1967).

[9] Section 3 provides:
  "No law shall be enacted in the Virgin Islands which shall . . . deny to any person therein equal protection of the laws." 1 V.I. Code. Annot. p. 92, 49 U.S.C. § 1406(g). The same provision remains after the federal constitutional protections were further extended to the Virgin Islands by Pub.L. 90–496, § 11, 82 Stat. 841, effective on its adoption on August 23, 1968 (48 U.S.C. § 1561). See, for the 1968 amendments, 3 U.S. Cong. Code & Adm. News 1968, 3548, 3553.

[10] Supra, n. 3.

[11] McKane v. Durston, 153 U.S. 684, 687–88 (1893); see also Griffin v. Illinois, 351 U.S. 12, 18 (1956).

imposed upon it discriminatory limitations which violate the right to the equal protection of the laws.[12]

The question, therefore, is reduced to the inquiry whether defendant's condition as a juvenile found guilty of petit larceny placed him in a status sufficiently different from that of an adult convicted of the same offense that he may be denied the absolute right of appeal granted to adults.

■ Beginning with the watershed decision of In re Gault the Supreme Court has made it clear that juveniles are within the shelter of the guarantee of due process. It has therefore held that a juvenile is entitled to the constitutional protection of adequate notice of the hearing and the nature of the offense charged against him,[13] the right to have counsel at the hearing,[14] the privilege against compulsory self-incrimination,[15] the right to confront the witnesses against him,[16] the right to adequate notice of proceedings certifying him for trial as an adult,[17] and the right to have the adjudication against him based on proof of the charge beyond a reasonable doubt rather than by a preponderance of the evidence.[18] While these cases were decided under the due process clause of the Fourteenth Amendment, there is no reason for withholding similar application of the equal protection clause in appropriate aspects of juvenile court proceedings.[19]

In the case before us, the Municipal Court acquired jurisdiction of the defendant under 4 V.I. Code § 172(1)(D), because he was "alleged to have violated . . . [a] territorial

---

[12] Griffin v. Illinois, 351 U.S. 12 (1956); see also Douglas v. California, 372 U.S. 353 (1963).

[13] In re Gault, 387 U.S. 1, 33 (1967).

[14] Ibid at 41.

[15] Ibid at 55.

[16] Ibid at 56.

[17] Kent v. United States, 393 U.S. 541 (1966).

[18] In re Winship, 397 U.S. 358 (1970).

[19] Cf. Knight v. Board of Education of City of New York, 48 F.R.D. 108 (1968).

'. . . law . . .,"[20] by committing petit larceny. At the conclusion of his trial in the Juvenile and Domestic Relations Division, the judge announced that "the court finds the defendant guilty as charged of having stolen the money described in the complaint."

The adjudicative process serves the same goal in both juvenile and criminal trials, the determination of responsibility and the propriety of the state's infringement of the defendant's liberty. It is true that the care and custody which is then afforded a juvenile may differ from that given an adult in both nature and duration.[21] And while both these aspects of juvenile proceedings are characteristically informal and flexible, the Supreme Court's declaration that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"[22] expresses its determination to prevent the degeneration of this informality and flexibility into unguided caprice.

■ For this reason defendant's trial was required to adhere to the fundamental requirements of due process. What was at stake then was the integrity of the trial, and the adjudicatory process was safeguarded by those guarantees which are the hallmarks of a civilized society's treatment of those whose liberty it seeks to invade.

■ The informality and flexibility of the juvenile adjudication and the subsequent treatment make the right of appeal perhaps more, and certainly not less, vital to safeguard those subject to the juvenile process from the possible degeneration warned against in Gault. This is exemplified here by defendant's commitment for a period of over three years for an offense which justified imprisonment for at most one year in an adult criminal case. We find no consideration lying at the core of the concept of a separate

---

[20] 4 V.I. Code § 172(1)(2) are quoted in full, infra, n. 22.

[21] R.R. v. Texas, Court of Civil Appeals of Texas, 448 S.W.2d 187 (1969), app. dis. — U.S. — (1970).

[22] In re Gault, supra, at 13.

321

system of justice for juveniles which is impaired by an appeal. Far from being harmful, appellate review is a beneficial safeguard for both the juvenile system and the juvenile accused. We therefore conclude that it was a denial of the equal protection of the laws to deny to defendant the right of review accorded to adults.

■ While in the present case the juvenile proceedings adjudicated that defendant had violated a criminal statute of the Virgin Islands, we believe no valid distinction regarding the absolute right of appeal may be drawn between those juvenile cases which allege a specific violation of the criminal law and every other case in which a juvenile is brought before the Municipal Court. The categories of cases of children under 18 years of age and of certain minors beyond that age are set out in 4 V.I. Code § 172.[23] It will be seen from these categories that the same conduct of a juvenile who has violated a criminal law (subsection (1)

---

[23] Section 172 provides:
  "Except as otherwise provided herein and subject to the exclusive jurisdiction of the district court in causes arising under the laws of the United States, the juvenile and domestic relations division of the municipal court shall have jurisdiction in proceedings:
  "(1) Concerning any child under 18 years of age living or found within the judicial division (A) who is neglected as to proper or necessary support or education as required by law, or as to medical, psychiatric, psychological or other care necessary for his well-being, or who is abandoned by his parent or other custodian, (B) whose occupation, behavior, condition, environment or associations are such as to injure or endanger his welfare or that of others, (C) who is beyond the control of his parent or other custodian, or (D) who is alleged to have violated or attempted to violate any federal, state, territorial, or local law or municipal ordinance, regardless of where the violation occurred;
  "(2) Concerning any minor 18 years of age or older living or found within the judicial division alleged to have violated or attempted to violate any federal, state, territorial or local law or municipal ordinance prior to having become 18 years of age, the court being empowered to deal with such a minor under the provisions of this chapter relating to children;
  "(3) To determine the custody or guardianship of the person of any child under 18 years of age living within the judicial division, for the adoption of a minor and to terminate parental rights in connection with such proceedings;
  "(4) For judicial consent to the marriage of a child under 18 years of age, when such consent is required by law; and
  "(5) For the treatment or commitment of a mentally defective or mentally disordered or emotionally disturbed child under 18 years of age."

(D)) would readily serve in most cases either as evidence or as the entire basis for a charge under other categories of juvenile delinquency, such as endangering the welfare of himself or others (subsection (1)(B)) or being beyond the control of his parent or other custodian (subsection (1) (C)) or as one who is neglected or abandoned (subsection (1)(A)). This does not, of course, exhaust the interrelation between the various provisions of § 172. In all of them, it is only when the court makes a decree based on findings of fact that a child falls within one of these jurisdictional provisions, that the statute authorizes it to employ the characteristic juvenile court remedies under 5 V.I. Code § 2506. Among the remedies which the court may decree under § 2506 in any of these cases is commitment. The determining factor, therefore, is not so much whether the juvenile is charged with the commission of a crime or what other category of § 172 the charge falls within, but rather what disposition the Municipal Court makes of the juvenile himself in its decree. If the ultimate result of its decree is the loss of the juvenile's liberty, whether the immediate occasion is a finding designating him as a delinquent or a criminal, the result is realistically the same as that which would follow from a declaration of criminality.[24] In all cases where the juvenile is deprived of his liberty there inheres equally an absolute right of appeal.

■ We hold, accordingly, that § 33 of Title 4 of the V.I. Code is invalid to the extent that it requires a juvenile to obtain the special allowance of the District Court for an appeal from the Municipal Court in a case in which the

---

[24] Winship at 365–66, quoting Gault at 36:
"We made clear in [Gault] . . . that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' [In re Gault, 387 U.S.] . . . at 36."

decision of the Municipal Court imposes a restraint upon his liberty.

The order of the District Court will be vacated and the case remanded to the District Court with direction to treat the petition as a notice of appeal and to hear the appeal on the merits.

---

SEITZ, *Circuit Judge*, concurring.

I concur in the result reached by the majority.

I agree with Judge Freedman's opinion to the extent he holds that the discretionary right of appeal for juveniles found in 4 V.I. Code § 33 constitutes a violation of the juvenile's equal protection rights in that it denies him the same right of appeal as is accorded adults convicted of the same criminal offense. I find it unnecessary to decide whether section 33 is also constitutionally defective in providing only a discretionary appeal right for a juvenile in other situations where he has been deprived of his liberty as a result of a decree of the Municipal Court.

---

GANEY, *Circuit Judge*, dissenting.

This case is one of first impression and concerns the question of whether § 33, 4 V.I. Code,[1] is Constitutional. The legal question here involves a fourteen-year-old boy convicted, under § 1084, 14 V.I. Code,[2] under the circumstances largely set forth in the majority opinion, with the additional fact that the appellant voluntarily went with

---

[1] This section reads as follows: "The District Court has appellate jurisdiction to review the judgments and orders of the Municipal Court in all civil cases, in all juvenile and domestic relations cases, and in all criminal cases in which the defendant has been convicted, other than on a plea of guilty. Appeals in civil, juvenile and domestic relations cases may be taken by the party aggrieved by the judgment or order appealed from, but in juvenile and domestic relations cases they may be taken only if specially allowed by the district court."

[2] This section reads as follows: "Petit larceny. Whoever commits larceny under any other circumstances is guilty of petit larceny and shall be fined not more than $200 or imprisoned not more than 1 year, or both."

the alleged victim and his companion to the police station and enroute told them he had gotten the money from two other boys, which he repeated at the police station in the presence of his uncle. This fact reveals no pressure, promise or coercion whatsoever and, while this happening was previous to Escobedo v. Illinois, 378 U.S. 478 (1964) and Miranda v. Arizona, 384 U.S. 436 (1966), nevertheless, the statements were voluntarily made and were, in no wise, harmful to the defendant and, as a matter of fact, they constituted his defense and were, if anything, beneficial to him.

The majority opinion holds in one portion, as follows: "We therefore conclude that it was a denial of the equal protection of the laws to deny to defendant the right of review accorded to adults." It would therefore seem that at this point the majority holds the statute unconstitutional on an ad hoc basis; that it is applicable only to the circumstances involving this defendant. However, after further discussion of the problem, the majority concludes: "We hold, accordingly, that § 33 of Title 4 of the V.I. Code is invalid to the extent that it requires a juvenile to obtain the special allowance of the District Court for an appeal from the Municipal Court in a case in which the decision of the Municipal Court imposes a restraint upon his liberty." The finality of this holding renders the statute unconstitutional, as to *all juveniles* where their liberty is restrained and only to that extent. This leads to no little confusion. If the statute, in the first instance, is unconstitutional as to this defendant by reason of the denial of a right to a full appeal by him which is granted to an adult, then it seems to me that there is a conflict when, finally, the holding makes the statute unconstitutional to the extent that it imposes a restraint upon a juvenile's liberty—any juvenile. Here it should be noted that the statute per se is not unconstitutional, but only to the extent that it imposes

a restraint upon a juvenile's liberty, and this, in turn, would eviscerate § 33 because in all the instances which the majority sets forth in § 172, the Municipal Court can find a juvenile not guilty, guilty and place him in custody or put him on probation, as set forth in 5 V.I. Code, § 2506, and in any case, whether it be a criminal offense or any of the minor matters set forth in that section, such as delinquency, etc., the probation always contains a restriction on the juvenile's liberty. This, at least, would open Pandora's Box to every judgment by the Municipal Court which, of necessity, must restrain his liberty and flood the District Court with trifling appeals, such as the instant one, or at most, really render that portion of § 33, as to the discretion vested in the District Court in granting special allowance to juveniles, worthless.

I hold § 33 to be Constitutional. As I stated at the outset, this was a case of first impression for the reason that this Section has served the Virgin Islands well and has stood firm through many revisions since its inception in the Code of 1921, including a complete revision by an Advisory Commission, created by the Secretary of the Interior in 1955, and this is its first challenge in the Courts in half a century. While I do not hold that age lends sanctity to any law, no matter how hoary, serious fault should be shown before it is struck down, in the face of the circumstances here shown.

The differentiation expressed in the statute, in my judgment, is a proper exercise of a legislative function by the local Legislature. This differentiation is a reasonable one and not arbitrary or frivolous, and is compelled by the very statute itself differentiating between separate and disparate systems of court procedure, one aimed at correction and rehabilitation, and the other, punitive. Here, the Legislature invested jurisdiction in the juvenile courts to be dispensed in an informal and relaxed atmosphere, unin-

hibited by strict rules of evidence, where a study of the whole individual is made, his life background and parental status, his economic situation, his moral environment, and thus a court dealing with these characteristics of juveniles and concerned wholly with them, gave the Legislature, in my judgment, warrant to place some degree of finality in the exercise of its expertise, to be checked only by the District Court in a screening for special allowance for appeals where unreasonable or arbitrary dispositions are made by the Municipal Court.

The majority cites Griffin v. Illinois, 351 U.S. 12 (1956) and Douglas v. California, 372 U.S. 353 (1963), in support of their position, but, in my judgment, their factual situations are not comparable to the instant case. These cases concern adults, whose right to appeal was dependent upon their ability to pay the necessary fees, in the former case for a transcript on appeal, and in the latter, for the courts to conform with a Rule of Civil Procedure wherein it was required to make an ex-parte examination of the record to determine whether the appointment of counsel for petitioner would or would not be of advantage to the defendant or helpful to the appellate court. In both instances, there was broad discrimination between the rich and the poor.

However, the majority's main reliance is on In Re Gault, 387 U.S. 1 (1967), with repeated references thereto, and in one instance, quoting from In Re Winship, 397 U.S. 358 (1970), a portion from In Re Gault, supra, which portion has reference only to the adjudicatory stage of the proceeding. In Re Gault has nothing whatsoever to do with appellate procedures and speaks directly to it in precise, crystal-clear language, at page 13, where the Court states: "We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider

the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the prejudicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. See note 48, infra. We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." Note 48, which concerns the National Crime Commission Report, states, inter alia, "The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the precedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process." Again, on page 58, the Court states: "This Court has not held that a State is required by the Federal Constitution 'to provide appellate courts or a right to appellate review at all.' In view of the fact that we must reverse the Supreme Court of Arizona's affirmance of the dismissal of the writ of habeas corpus for other reasons, we need not rule on this question in the present case or upon the failure to provide a transcript or recording of the hearings—or, indeed, the failure of the Juvenile Judge to state the grounds for his conclusion." It is thus apparent that In Re Gault supra, has, indeed, no relevancy to the question posed here.

The statutory violation here was a rather trifling offense, petit larceny—the taking of $12—and to subject a fourteen-year-old to custody for four years, thus depriving him of his liberty and freedom of action during the most formative part of his early life, is a truly harsh sentence, especially when the record shows no previous delinquency or aggravating circumstances surrounding the occurrence,

which called for such severe punishment. Sentences in the Juvenile Court should comport with its correctional and rehabilitative aims and objectives of the system as it is structured, which has long envisioned the guiding helpful hand, rather than punitive sanctions or retribution. While this sentence—a commitment for four years to the Department of Social Welfare—was not asserted by counsel for the juvenile as one of his alleged complaints, nor mentioned by the majority as a reason for remand were it not for its alleged unconstitutionality of § 33, I feel strongly its mitigation should warrant the attention of this court.

It is to be remembered that an able and experienced Judge of this Court, on two different occasions denied the right of appeal. On the first occasion there was argued to him the insufficiency of the evidence and the failure of the court to give the defendant the benefit of the doctrine of reasonable doubt. An examination of the record would support the denial of the right of appeal, as much of the record discloses sufficient evidence of the finding of the judgment of conviction and, as can be seen from the colloquy between the court and counsel, the question of reasonable doubt was presented to the court to be used as a guideline in the determination of the defendant's guilt and by the court agreeing therewith by saying, "I would think so.", fair inference can be made that the court used the doctrine of reasonable doubt in the determination of his guilt. On the second petition for appeal, In Re Gault, supra, was brought to the attention of the court and it again denied the petition after argument.

However, while I hold the statute Constitutional, I am constrained to further hold that the District Court abused its discretion in this instance as to this defendant in respect to the sentence which was imposed by the Municipal Court.

Therefore, I would vacate the judgment of the lower court and direct a remand of the case to the Municipal Court for the imposition of sentence, and if custody under the Department of Social Welfare is imposed under one year, an accompanying statement of the reason therefor should be filed; and if custody for a year or more is imposed by reason of the juvenile's repeated violation of any of the offenses contained in § 172, which would require a longer period for his rehabilitation, a more detailed finding of specific facts and the conclusions drawn therefrom should be made, showing that the period of rehabilitation for the juvenile's correction is required, and should be filed with the judgment.