266 So.2d 726 (1972)
In re STATE of Louisiana in the Interest of Jerry L. AARON, Defendant, Appellant.
No. 3960.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1972.
W. T. McCain and Robert L. Kennedy, Colfax, for defendant-appellant.
Sam L. Wells, Dist. Atty., Colfax, for plaintiff-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
The fifteen year old indigent defendant appeals the adjudication committing him *727 to the juvenile training school for an indefinite period. His appeal to the Louisiana Supreme Court was transferred to this court. State of Louisiana v. Aaron, 262 La. 3, 262 So.2d 349 (1972). We set aside the commitment and remand the case to the Juvenile Court.
The trial testimony was not recorded and there is no statement of facts by the trial judge. The petition filed by the Juvenile Parole and Probation Officer alleged that the juvenile was on parole and had violated the conditions of parole. The prior commitment and conditions of parole are not in the record. There is no reference to a prior commitment or to conditions of parole found in the court minutes. The commitment cannot stand without evidence to establish these essential elements.
We have reviewed the record to consider the allegations of juvenile delinquency as new offenses which might support the commitment. The petition alleged four counts of delinquency. It is apparently conceded that no evidence was presented as to counts three and four. As to count one (excessive unexcused absences from school) it is contended that the witnesses did not have records to show how many absences had been excused and therefore the evidence did not establish defendant's guilt beyond a reasonable doubt. State in Interest of Taylor, 255 So.2d 361 (La.App. 1 Cir. 1971); State in Interest of Hampton, 257 So.2d 459 (La.App. 1 Cir. 1972). As to count two (that defendant failed all subjects while on probation) it is contended that a finding of parole violation based on this finding would violate the juvenile's due process.
The petition upon which this commitment is based was filed January 28, 1972. The court promptly appointed an attorney to represent the juvenile. On February 2, 1972, appointed counsel filed an extensive and detailed motion for a bill of particulars. Answers were filed by the district attorney on February 18, 1972, and supplemental answers were later filed. Trial was held on March 17, 1972 resulting in the commitment to Louisiana Training Institute.
On March 27, 1972 defense counsel filed a motion in arrest of judgment and for a new trial. On April 13, 1972 he perfected two bills of exception making the entire proceedings a part thereof and moved for an appeal to the Louisiana Supreme Court. On May 10, 1972 defense counsel notified the trial judge and the district attorney that he was applying to the Louisiana Supreme Court for writs and a stay order. This application for writs arrived in our court on May 24, 1972 along with the record which was transferred by the Louisiana Supreme Court. Defense counsel requested by letter that the application for writs addressed to the Supreme Court be considered his brief to this court. We treat that application as a brief.
According to an exhibit attached to the brief (the writ application), defense counsel prepared and submitted to the trial judge and district attorney a narrative of the witnesses testimony. There is a statement below the suggested narrative that ". . . the above statement was refused by the presiding judge who also refused to provide a written narrative fact statement." This statement was not made by the district attorney or the presiding judge. On the contrary, the district attorney stated by brief that "No attempt has been shown to have been made by counsel for said juvenile to have an agreed Statement of Facts." Neither counsel appeared for oral argument so we have not questioned counsel concerning this conflict.
LSA-R.S. 13:1579 provides that in juvenile hearings
". . . stenographic notes or other transcript of the hearings shall be required *728 only if the court so orders and then, at the court's expense, provided, however, that any party to a proceeding may have such transcript made at his own expense."
The state argues that this statute requires stenographic notes only when the court so orders or when one of the parties undertakes prior to trial to have the testimony recorded at his own expense. We reject this contention.
The quoted language is ambiguous. Section 1579 provides that ". . . any party to a proceeding may have such transcript made at his own expense." The preparation of a transcript is a step removed from the recording of testimony. The testimony is recorded at trial. Preparation of a transcript is accomplished at a later date. Since there is no requirement that the request for a transcript be lodged prior to trial, we hold that a request for a transcript made after trial must be honored. Here the request was made when the entire proceedings were made part of the juvenile's bill of exceptions.
This interpretation of § 1579 is supported by LSA-R.S. 13:1586 and 1587 which respectively provide in part:
"The court shall make or have made and keep records of all cases brought before it . . ."
* * * * * *
"The judge of the court may employ such stenographic, secretarial and other personnel as may be deemed necessary to make the functions of the court effective and provide adequate service . . ."
We note that the ambiguity in LSA-R.S. 13:1579 was removed by a 1972 amendment and now provides that:
". . . The hearings shall be reported or recorded by stenographic notes or a mechanical or electronic recording device.. . ."
The requirement in LSA-R.S. 13:1579 (as written prior to the 1972 amendment) that testimony be recorded is in keeping with the requirements of due process in juvenile cases as outlined in the landmark case of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Many of the due process safeguards theretofore applied only in adult criminal cases were extended to juvenile cases. Among these were the rights to notice of the charges, right to counsel, right to confrontation and cross-examination, and the privilege against self incrimination. The court specifically stopped short of extending to juveniles the right to have a transcript and the right to appellate review. It did so however, with the admonition that
"failure to provide an appeal, to record the proceedings, or to make findings or state the grounds for the juvenile court's conclusion may be to throw a burden upon the machinery for habeas corpus, to saddle the reviewing process with the burden of attempting to reconstruct a record, and to impose upon the Juvenile Judge the unseemly duty of testifying under cross-examination as to the events that transpired in the hearings before him." 387 U.S. at 58, 87 S.Ct. at 1460.
In a concurring opinion, Justice Harlan stated that due process in juvenile proceedings required a written record so that an adequate review could be had. According to Justice Harlan, ". . . the court must maintain a written record, or its equivalent, adequate to permit effective review on appeal or in collateral proceedings." 387 U.S. at 72, 87 S.Ct. at 1467.
The thrust of Gault was that ". . . neither the bill of rights nor the fourteenth amendment is for adults alone." 387 U.S. at 13, 87 S.Ct. at 1436. The court's failure to hold that due process for juveniles required a transcript and the right to appellate *729 review, resulted not from the view that these were not essential to a fair hearing. Indeed, the opposite is persuasively suggested by the above quotations. The court did not rule on this issue. In Gault there was a record to review and the case was decided on other grounds. It was noted that the right to appellate review of state decisions had not been required under the fourteenth amendment. See 387 U.S. at 58, 87 S.Ct. 1428 wherein Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) was cited.
While it is true that the United States Supreme Court has not held that due process requires the states to provide a right to appellate review, it was held in Griffin that where a state provides an appeal process, it may not discriminate against people on the basis of poverty. The court held that Griffin was substantially prejudiced in his appeal because he was denied a transcript of the record.
The reasoning supporting the requirement that testimony be recorded and a transcript furnished to indigent adults is appropriate to indigent juveniles.
In re Brown, 439 F.2d 47 (3 Cir., 1971), in language reminiscent of that in Griffin, supra, held that although a state appeal system is not constitutionally required; once established, the right to appeal must be extended to juveniles as well as to adults. If the right to equal protection of the laws compels states to provide appeals to juveniles where appeals are provided for adults; then the same constitutional compulsion which led to Griffin (i. e., the ban on discrimination based on poverty insofar as it relates to effectively appeal), requires that the incidents of an effective appeal, including a record from which a transcript can be drawn, be made available to juvenile defendants.
The state also contends that the appeal should be dismissed because appellant failed to include recorded testimony or a statement of facts. LSA-C.C.P. Art. 2131 and decisions in civil cases support this contention. Clark v. Richardson, 157 So.2d 325 (La.App. 3 Cir. 1963); Mid-City Investment Co. v. Young, 238 So.2d 780 (La.App. 1 Cir. 1970). This is answered by the Louisiana Supreme Court's refusal to apply the rules of either criminal or civil procedure "by inference or implication" to appeals from juvenile courts. In re Diaz, 211 La. 1015, 31 So.2d 195 at 196 (1947). We are not disposed to dismiss an appeal in a juvenile case on a technical inference drawn from our civil procedure.
We take judicial notice that many courts throughout the state record testimony in all civil cases which are appealable. This notwithstanding the fact that LSA-R.S. 13:961(C) requires this only "when ordered so to do by the presiding judge." In the Thirteenth Judicial District, the court reporter is required to "report" and "transcribe into longhand by typing all the testimony taken in all civil appealable cases tried in open court. . ." LSA-R.S. 13:963(D). In the Twenty-fifth Judicial District Court, the court reporters ". . . shall take down the testimony, objections and rulings thereon, and bills offered in all civil cases, . . ." LSA-R.S. 13:972(C).
Since the recordation of testimony in civil appealable cases (those involving at least $100) is either customary or required, it is difficult to conclude that LSA-R.S. 13:1579 as written prior to the 1972 amendment, could be interpreted to require a juvenile to request recordation of testimony prior to trial.
The commitment of Jerry L. Aaron to the Louisiana Training Institute is set aside and the cause remanded for further proceedings.
Commitment set aside; case remanded.
DOMENGEAUX, J., dissents and assigns written reasons.
*730 DOMENGEAUX, Judge (dissenting).
I respectfully submit that the majority opinion grants constitutional rights which do not exist. There is a distinction between a "record" and a "transcript". Under LSA-R.S. 13:1586 it is mandatory that juvenile courts make or have made and keep records in all cases brought before them. Our jurisprudence defines a record as including the caption of the case, a statement of time and place of holding the court, the indictment or information (petition in this case), the arraignment, the plea of the accused, mention of the impaneling of the jury (if a jury case), verdict, and judgment of the court. State v. Bateman, 209 La. 1036, 26 So.2d 130; United States v. Taylor, 147 U.S. 695, 13 S.Ct. 479, 37 L.Ed. 335; State v. McCrocklin, 130 La. 106, 57 So. 645, 646; State v. Keife, 165 La. 47, 115 So. 363; State v. Leon, 177 La. 293, 148 So. 54; State v. Eubanks, 179 La. 92, 153 So. 31; State v. Daleo, 179 La. 516, 154 So. 437; State v. Willis, 250 La. 33, 193 So.2d 775 (1967). The record in this case contains these requisites.
A transcript is usually understood to be a copy of the testimony and proceedings adduced at a trial or hearing. Although it is now mandatory that proceedings in juvenile hearings be reported for ultimate transcription (LSA-R.S. 13:1579, as amended in 1972) this requirement was not in effect at the time of the hearing involved in this appeal.
Gault does not hold that a transcript is necessary under due process; neither does Griffin v. Illinois say that an accused, whether indigent or otherwise, is entitled under due process to a transcript of the proceedings without first requesting that the testimony be reported or recorded.
But assuming, arguendo, that a juvenile is entitled to a transcript when he is tried in the first instance for delinquency, such would not be the case in the proceeding before us which was to determine whether the appellant's parole should be revoked. He had previously been found guilty of being a delinquent, was committed to the juvenile institution, and later paroled.
Appellant suggests that charges against juveniles must be proved beyond a reasonable doubt as in adult proceedings. I agree with this contention when applied to original juvenile proceedings, but not with regard to a proceeding to revoke parole.
A juvenile proceeding for revocation of parole is a hearing on the question of whether or not the defendant has met the conditions under his parole and is not considered to be another trial. Shaw v. Henderson, 303 F.Supp. 183 (D.C., 1969), affirmed 430 F.2d 1116 (5 Cir., 1970).
In U. S. ex rel. Lombardino v. Heyd, D.C., 318 F.Supp. 648 at 652 (1970) affirmed 438 F.2d 1027 (5 Cir., 1971) the court stated:
"A probation revocation hearing is not an adversarial proceeding; it is neither a civil action nor a criminal prosecution. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963). Rather, it is administrative in nature and `is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed [on probation].' United States ex rel. Sperling v. Fitzpatrick, supra, [2 Cir.,] 426 F.2d [1161] at 1163."
In the Shaw case we find the following language:
"Revocation of probation is the severest of four different discretionary sanctions which Louisiana courts may apply when they find that probationers are not responding properly to their conditional freedom. LSA-C.Cr.P. art. 900. A probationer cannot appeal the proper utilization by the state of any of those procedures." (Emphasis added.)
Revocation of probation is within the discretion of the trial judge. He need only be reasonably satisfied that the probationer has violated a condition of his release. United States v. Cates, 402 F.2d 473 (4 *731 Cir., 1968). There is likewise no requirement that a probationer be convicted of a crime before his probation can be revoked, Shaw case, supra. ". . . The specific constitutional safeguards of counsel, witnesses, evidence, confrontation, cross-examination and compulsory process are not required at state parole revocation hearings." Martinez v. Patterson, 429 F.2d 844 (10 Cir., 1970), certiorari denied 402 U.S. 934, 91 S.Ct. 1528, 28 L.Ed.2d 868 (1970).
I conclude therefore that the recommitment of the juvenile involved in this proceeding should be affirmed.
I respectfully dissent.