RV, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION; New York City Board of Education; Joel Klein; Reyes Irizarry; Ana Santiago, Defendants.

SG, et al., Plaintiffs,

v.

New York City Board of Education, et al., Defendants.

Gabriel Ruiz, et al., Plaintiffs,

v.

Paul Pedota, et al., Defendants.

Nos. 03–CV–5649(JBW), 03–CV–5152(JBW), 03–CV–0502(JBW).

United States District Court, E.D. New York.

June 17, 2004.

Hechtman, Randee Waldman, Morrison & Foerster LLP, by Rachel Wertheimer, New York, NY, for Plaintiffs.

New York City Department of Education, Office of Legal Services, by Alexandra D. Michalos, New York City Law Department, by Emily Sweet, Assistant Corporation Counsel, New York, NY, for Defendants.

MEMORANDUM, JUDGMENT & ORDER

JACK B. WEINSTEIN, Senior District Judge.

Table of Contents

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 538

II. Importance of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 540

III. Bushwick High School . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 540
    A. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 540
    B. Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 541

IV. Martin Luther King, Jr. High School . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542
    A. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542
    B. Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542

V. Franklin K. Lane High School . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542
    A. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542
    B. Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542

VI. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 543
Appendix A RV Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 543
Appendix B Ruiz Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 550

I. Introduction

Exposed in these three cases is a lesion—the alleged "pushing out" of difficult-to-educate students—that has been festering for many years. *See, e.g., Knight v.*

*Bd. of Educ.*, 48 F.R.D. 115 (E.D.N.Y. 1969) ("This transfer from the rolls of Franklin K. Lane High School was, in a number of instances, a *de facto* discharge from the high schools operated by the defendant...."); *Knight v. Bd. of Educ.*, 48 F.R.D. 108 (E.D.N.Y.1969). Like generations of students before them, plaintiffs in these cases believe that they were illegally discharged from a New York City public school.

This twenty-first century iteration of the problem began when plaintiffs, led by Gabriel Ruiz, filed a class action complaint against the New York City Department of Education ("DOE") and others in *Ruiz v. Pedota* (03–CV–0502). This first case, involving Franklin K. Lane High School ("Lane"), was settled on January 6, 2004. *See Ruiz v. Pedota*, 2004 U.S. DIST. LEXIS 50 (E.D.N.Y. Jan. 6, 2004).

In October of 2003, a second action on behalf of student SG was filed against the DOE, alleging the pushing out of students at Martin Luther King, Jr. High School ("King"). *See SG, et al. v. New York City Bd. of Educ., et al.*, No. 03–CV–5152 (filed Oct. 10, 2003). This case was dismissed on consent on May 26, 2004.

Rounding out the trilogy, plaintiff RV commenced an action in November of 2003 based on the alleged illegal exclusion, expulsion and discharge of high school students from Bushwick High School ("Bushwick"). *See RV, et al. v. New York City Bd. of Educ., et al.*, No. 03–CV–5649 (filed Nov. 7, 2003). The parties in *RV* have entered into a settlement agreement.

Defendants denied liability in all these cases. Nevertheless, they have pledged to take noteworthy action and provide services to ensure that the problem is ameliorated and students receive more support to complete their secondary education.

Resolution of these cases will not solve the deep-seated socioeconomic, political and educational issues that underlay failures of our educational system. But, on the fiftieth anniversary of the historic *Brown v. Board of Education* case, it is a fitting reminder that the American struggle for educational excellence for all—a *sine qua non* of equality of opportunity—goes on, and with some success. *See, e.g., Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) ("We conclude that in the field of public education the doctrine of 'separate but equal' has no place."); *Hart v. Community Sch. Bd. of Brooklyn*, 383 F.Supp. 699 (E.D.N.Y.1974) (finding that school had been unconstitutionally segregated); Richard Kluger, Simple Justice: The History of *Brown v. Board of Education* and Black America's Struggle for Equality 751 ff. (Rev. ed.2004) (summary of post-*Brown* development); Jack Greenberg, Crusader in the Courts: Legal Battles of the Civil Rights Movement (50th Ann. ed.2004); Charles J. Ogletree, Jr., All Deliberate Speed: Reflections on the First Half Century of *Brown v. Board of Education* (2004); Robert Cottrol, Raymond T. Diamond & Leland B. Ware, *Brown v. Board of Education:* Caste, Culture, and the Constitution (2003); Lee Cokorinos, with an Introduction by Theodore M. Shaw, The Assault on Diversity (2003); Gary Orfield & Susan E. Eaton, with a forward by Elaine R. Jones, Dismantling Desegregation: The Quiet Reversal of *Brown v. Board of Education* (1996); Harvard Law School, Materials for the Celebration of Fiftieth Anniversary of *Brown v. Board of Education* (2004); Constance Baker Motley, Equal Justice Under Law (1998); Robert L. Carter, Thirty–Five Years Later: New Perspectives on *Brown* (1993); Oliver W. Hill, The Big Bang: *Brown v. Board of Education* and Beyond (2000). *But see* Gerald N. Rosenberg, The Hollow

Hope: Can Courts Bring About Social Change? (1991); Tresa Baldas, *School Suits: Educators face a variety of legal claims, spurious or not*, Nat'l L.J., May 17, 2004 at 1 ("A fear of lawsuits has gripped the nation's schools, creating a power struggle between the courts and educators, who say they have been forced into a defensive teaching mode.").

## II. Importance of Litigation

Although the Supreme Court has held that education is not, for federal constitutional purposes, a fundamental right, *see San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), it is universally acknowledged that good schooling for all is essential in a republic, particularly one engaged in global competition for minds and dollars. In New York State, the right to public education is enshrined in its constitution. *See* N.Y. Const. Art. XI, § 1; *Campaign for Fiscal Equity, Inc. v. New York*, 100 N.Y.2d 893, 901, 801 N.E.2d 326, 328, 769 N.Y.S.2d 106, 108 (2003) ("We begin with a unanimous recognition of the importance of education in our democracy. The fundamental value of education is embedded in the Education Article of the New York State Constitution."). It is embraced by the state's educators and leaders. *See, e.g.*, Tamar Lewin & Jennifer Medina, *To Cut Failure Rate, Schools Shed Students*, N.Y. Times, July 31, 2004 at A1 (quoting Deputy Mayor: "For any child being pushed out, we need to correct that problem, we need to fix it as soon as possible.").

Courts must view the *RV* and related cases with utmost seriousness since they involve constitutionally protected rights. They are mandated to ensure that complaining students are not deprived of opportunities to acquire necessary skills and understanding equal to that of other public school students.

While the instant litigations' total impact is relatively small in a City public school student body of some one million students, its principles—acknowledged by the City—set a standard for the entire system. *See* N.Y.C. Bd. of Educ., Vital Statistics (2003) (over one million students in the New York City public school system; the school budget in 2001 exceeding eleven billion dollars). In such a vast educational organization it is difficult to provide every student with the skilled individual care we would want for our own children. *See, e.g.*, Elisa Gootman, *City Creates New Paths to a Diploma*, N.Y. Times, May 29, 2004 at B1 ("[T]he Department of Education has laid the city's low graduation rates largely at the feet of its biggest high schools, which officials say foster a sense of anonymity that allows many students to slip through the cracks."). But—judging by these three cases—the City and its officials are struggling to improve the situation. *See, e.g.*, Elisa Gootman, *City's Small Schools Uneasy Inside the Big Ones*, N.Y. Times, Apr. 14, 2004 at A1 ("New York City has been a nationwide leader in the small schools movement, and replacing large high schools is a centerpiece of [the mayor's] efforts to overhaul the school system."); Elisa Gootman, *City Creates New Paths to a Diploma*, N.Y. Times, May 29, 2004 at B1 ("The push to create more alternative high schools also comes in the wake of a lawsuit filed last year by the nonprofit group Advocates for Children, which argued that many lagging students were being pushed out of school against their will.").

## III. Bushwick High School

### A. Claims

Plaintiff RV brought suit on behalf of himself and others similarly situated alleging that defendants denied them due process of law "by adopting a policy that result[ed] in their exclusion from school

and denial of their right to educational services...." Compl. at ¶ 1. The named plaintiff is an eighteen year-old Bushwick High School student with twenty credits towards graduation. He was active in school extracurricular activities, but he struggled in the academic arena, rarely attending classes. This litigation was filed as a class action.

Plaintiff alleges that he was rebuffed in his attempts to re-enroll in Bushwick. The school officials allegedly informed him that he could only enroll in the General Education Diploma ("GED") program. *See, e.g.,* Karen W. Arenson, *Making G.E.D. Programs More Than Test Prep,* N.Y. Times, June 16, 2004 at B7. Plaintiff tried the GED arrangement, but he was not satisfied that it met his educational needs. He continued to go to the school grounds and participate in student activities; he did not attend regular classes. He claims that after several meetings with school officials, he remained barred from regular enrollment in Bushwick. At the time the suit was filed, RV had missed two months of school.

It was alleged that Bushwick unlawfully excluded approximately thirty percent of its students during the school years 1998 to 2001. Many of the discharges allegedly violated the Fourteenth Amendment of the United States Constitution, section 1983 of title 42 of the United States Code, sections 3202 and 3214 of the New York State Education Law, and the New York City Chancellor's Educational Regulations. The complaint seeks an injunction restraining defendants from illegally excluding students from Bushwick, and other equitable relief.

## B. Resolution

The parties have entered into a settlement agreement now approved by this court. *See* Appendix A. It resolves the litigation without an admission of fault or liability. It protects the rights of Bushwick High School students who (i) have been designated as missing twenty or more consecutive school days ("Long–Term Absent Students"); (ii) have been discharged or transferred from Bushwick's register ("Separated Students"); and (iii) are currently enrolled ("Current Students").

Separated Students are given the right to re-enroll in Bushwick. Before enrolling, they are required to attend a useful guidance conference. In some instances, Defendants will also allow Separated Students to take classes at other DOE high schools if a comparable course is unavailable at Bushwick. Long–Term Absent Students will be readmitted to Bushwick within two days notice to the school by a student. The DOE has provided Separated Students and certain Long–Term Absent Students with the option of registering for the upcoming summer school session. Separated and some Long–Term Absent Students may voluntarily enroll in a GED program. Other important educational alternatives are addressed.

The agreement requires a Planning Interview prior to the discharge or transfer of most students. This is a crucial event. The student's record is reviewed and the best educational course is recommended in the presence of parent and student. The student and parent will then be in a good position to decide the student's future at Bushwick High School or in another branch of the City public schools. The interview includes at a minimum: (1) a review of the student's credits and progress towards a diploma; (2) an explanation of the student's rights; and (3) consideration of whether additional services are necessary to ensure that the student completes his or her education.

The DOE will provide data concerning discharges and transfers from Bushwick on a quarterly basis.

Notice of this settlement will be sent to interested parties in English and Spanish.

## IV. Martin Luther King, Jr. High School

### A. Claims

SG was a fifteen year-old student at Martin Luther King, Jr. High School ("King"). She brought suit on behalf of all students excluded from King "for reasons of age, lack of sufficient credits, failure to pass Regents' exams, poor grades, truancy or pregnancy. . . ." Compl. at ¶ 36.

The early part of 2002 was an especially traumatic period for SG. Her father died in January. She became pregnant in February. During the 2002–2003 school year SG struggled with class attendance and performance. She alleged that the school offered her no assistance. At the beginning of the 2003 school year, plaintiff claimed that she was informed that King was not a school for "pregnant people." Compl. at ¶ 44. While attending a public school designated for students with child, SG discovered that her former school should not have summarily excluded her. She returned to King and was allegedly told that she could not re-enroll. The complaint sought injunctive and declaratory relief and compensatory and punitive damages.

### B. Resolution

The case was dismissed on consent without prejudice as moot when a satisfactory resolution of SG's complaint was reached.

## V. Franklin K. Lane High School

### A. Claims

Plaintiff Gabriel Ruiz was a seventeen year-old student at Franklin K. Lane High School ("Lane"), a school historically beset with serious problems. *See, e.g., Knight v. Bd. of Educ.*, 48 F.R.D. 108 (E.D.N.Y. 1969); *Knight v. Bd. of Educ.*, 48 F.R.D. 115 (E.D.N.Y.1969). Ruiz was classified as an "English Language Learner." Throughout his time at Lane, he took "English as a Second Language" courses.

The school offered Saturday classes, but plaintiff claimed that the school gave no other assistance to help him. In June of 2002, Ruiz was absent from school for three weeks. He claimed that he told his guidance counselor that he was depressed. When he returned to school in the fall, he was told that he had insufficient credits to remain in school and that he had to enter a GED program. The choice allegedly given to Ruiz was either enter the GED program, or go home. Seeing no other option, Ruiz, allegedly, reluctantly went home.

### B. Resolution

The parties entered into a settlement agreement. *See* Appendix B. The agreement reached in *RV* was modeled on the *Ruiz* agreement and contains many of the same provisions. It also protects the rights of a similar cohort of Lane students: those who (i) had been designated as missing twenty or more consecutive school days ("Long–Term Absent Students"); (ii) had been discharged or transferred from Lane's register ("Separated Students"); and (iii) were currently enrolled ("Current Students").

Separated Students were given the right to re-enroll in Lane after attending a guidance conference, in addition to other rights discussed in Part III.B., *supra*. Significantly, the agreement called for implementation of a "Young Adult Success Center." The center is to be operated in conjunction with pre-existing support services. It is to be available at least twelve hours a week for Current and Separated Students to

provide crucial support. *See* Tamar Lewin, *Students Discharged Early are Invited to Return by City,* N.Y. Times, Jan. 30, 2004 at B7; Tamar Lewin, *City Settles Suit and Will Take Back Students,* N.Y. Times, Jan. 8, 2004 at B3.

## VI. Conclusion

*RV v. New York City Department of Education* (03–CV–5649) and *Ruiz v. Pedota* (03–CV–0502) are discontinued and dismissed without prejudice. The settlement agreements in appendices A and B are approved. This court has jurisdiction to adjudicate any dispute or controversy concerning the terms and conditions of the settlement agreement. The court retains foot-of-the-decree jurisdiction. Compliance information required to be furnished periodically to plaintiffs' attorneys by Section 8 of the *RV* agreement shall be filed with the court.

*SG v. New York City Department of Education* (03–CV–5152) is dismissed.

The court thanks the attorneys and officials of the City of New York and of Advocates for Children for resolving these cases so effectively with the assistance of Special Master Joshua Hill.

SO ORDERED.

## *APPENDIX A*

### *AGREEMENT*

**WHEREAS,** plaintiff RV commenced a lawsuit entitled *RV v. New York City Department of Education, et. al.,* Docket No. 03–5649 (the *"RV Action"*) filed on November 7, 2003 in the United States District Court for the Eastern District of New York (hereinafter, the "Court"), alleging that defendants New York City Department of Education, New York City Board of Education, Joel Klein, Chancellor of the New York City school system, Reyes Irizarry, Regional Superintendent of Region 4, and Ana Santiago, Principal of Bushwick High School (collectively, "Defendants") violated federal and state law by denying Plaintiff RV educational services and excluding him from credit-bearing classes at Bushwick High School; and

**WHEREAS,** Defendants have denied any and all liability arising out of Plaintiffs' allegations; and **WHEREAS,** the parties now desire to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability;

**IT IS AGREED AMONG THE PARTIES AS FOLLOWS:**

1. The effective date of this agreement is the date of entry of an Order of Discontinuance without prejudice of the *RV Action.*

2. Definitions.

a. Agreement Period: The period from the effective date of this agreement up to and including June 30, 2006. Notwithstanding this definition, certain portions of this agreement may survive beyond June 30, 2006 as specified in paragraph 3(f) of this agreement.

b. BHS: Bushwick High School, located at 400 Irving Avenue, Brooklyn, N.Y. 11237. BHS does *not* refer to any other high school or program located at that address.

c. The designation "LTA" applies to a student who is absent from school for twenty (20) or more consecutive school days.

(i) Group A LTA Student: A student who is registered for BHS and was designated as a long-term absence at any point from January 6, 2004, to the effective date of this agreement.

(ii) Group B LTA Student: A student who is registered for BHS and designated

as a long-term absence at any point during the Agreement Period.

d.   Separated BHS Student: Any student who was discharged or transferred from BHS's register during the period from September 1, 2002, to the effective date of this agreement. The definition of Separated BHS Student does not include any student who (i) transferred from BHS to any other DOE High School when the transfer was completed within five (5) school days, (ii) transferred to any private or parochial school, (iii) moved outside the City of New York ("City"), or (iv) entered military service.

e.   Current BHS Student: A student who is on the register at BHS during the Agreement Period.

f.   DOE: The New York City Department of Education, the New York City Board of Education, Joel Klein, in his official capacity as Chancellor of the New York City school system, and any successor Chancellor of the New York City school system in his or her official capacity during the Agreement Period.

g.   DOE High School: A secondary school operated by the DOE that provides students in grades 9 through 12 a program of instruction with the opportunity to meet all the requirements for and receive a Regents or, if eligible, Local High School Diploma. This term includes alternative high schools, provided they award Regents or Local Diplomas.

h.   DOE GED Program: A program operated by the DOE providing instruction to assist students in preparation for a New York State high school equivalency diploma ("GED"), as provided by 8 N.Y.C.R.R. Part 100.

i.   DOE Adult Education Program: A DOE educational program that provides instruction to individuals over the age of 21 in preparation for a GED.

j.   DOE Evening High School: A DOE educational program that offers eligible students under the age of 21 the opportunity to take high school credit-bearing classes and the examinations needed to obtain a Regents Diploma and/or if applicable, a Local High School Diploma.

k.   DOE Summer School: A DOE educational program that offers students under the age of 21 the opportunity to take high school credit-bearing classes during the summer.

3.   Admission to DOE High School, DOE GED Program, DOE Adult Education Program, DOE Evening High School, or DOE Summer School:

A Separated BHS Student who is under the age of 21 and wishes to register for or attend classes at BHS has a right to do so, but must register for BHS pursuant to the procedures set forth in subparagraph 3(g) of this agreement and will be required to attend a guidance conference prior to re-registering. If the student wishes to re-register at BHS, but the student needs courses in order to graduate that are not available at BHS, the DOE shall arrange for the student to take a comparable course(s) that will fulfill the requirement(s) for graduation at BHS or take the course(s) at another DOE High School, Evening High School or DOE Summer School.

Any Group A LTA Student and any Group B LTA Student who is under the age of 21 and wishes to return to BHS must be provided a program card and access to classes within two (2) school days of the student's notification of the student's desire to attend classes. Notification may be in writing, by letter, fax or email, to Ana Santiago, Principal, Bushwick High School, 400 Irving Avenue,

Brooklyn, New York 11237, or to the current acting BHS principal. Principal Santiago's fax number is (718) 381–1905 and her email address is asantia3@nycboe.net. Notification may also be made in person at BHS.

c. Separated BHS Students and Group A LTA Students under the age of 21 shall have the option of registering for a DOE Summer School for the 2004 summer session pursuant to the procedures set forth in subparagraph 3(g) of this agreement.

d. Separated BHS Students under the age of 21 who do not wish to reregister at BHS and Group A LTA Students under the age of 21 who do not wish to attend classes at BHS, may register for a DOE High School other than BHS pursuant to the procedures set forth in subparagraph 3(g) of this agreement.

e. Separated BHS Students and Group A LTA Students under the age of 21 who do not wish to register for or attend classes at a DOE High School may voluntarily elect to register for a DOE GED Program, a DOE Adult Education Program or DOE Evening High School, pursuant to the procedures set forth in subparagraph 3(g) of this agreement, provided the students meet the legal age requirements for such programs. Such students retain their right to attend the New York City public schools pursuant to N.Y. Education Law § 3202.

f. Separated BHS Students and Group A LTA Students who are 21 years or older at the time they request readmission or who turn 21 prior to obtaining a diploma shall be permitted to register in their choice of a DOE GED Program, DOE Adult Education Program, or DOE Evening High School, pursuant to the procedures set forth in subparagraph 3(g) of this agreement. The student will be given the option of obtaining a GED, Regents Diploma, or, if applicable, Local High School Diploma, at no cost to the student. Such student shall be permitted to take the courses and examinations needed to obtain the diploma sought and may continue to attend such program until June 30, 2008, or until the student obtains a diploma, whichever comes first, provided the student is making progress toward the diploma sought as determined by the DOE. If the student is seeking a Regents Diploma or Local High School Diploma, the student may take up to six credit-bearing courses per semester.

g. Separated BHS Students who wish to register for any of the programs outlined in subparagraphs 3(a), 3(c), (3)(d), 3(e) and 3(f) of this agreement, and Group A LTA Students who wish to register for the programs outlined in paragraphs 3(c), 3(d), 3(e) and 3(f) must deliver a written request providing the student's name, home address, telephone number, date of birth, name and dates of last educational program attended, and the name(s) of each DOE High School, DOE GED Program, DOE Adult Education Program, DOE Evening High School and DOE Summer School for which enrollment is sought, in order of preference if more than one is listed. If the student seeks to enroll for a future semester, the student must also indicate the semester for which enrollment is sought. The written request must be mailed, hand-delivered, faxed, or e-mailed to Jamie Cobham, Regional Director of Student Placement, Youth and Family Support Services, Region 4, 28–11 Queens Plaza North, Queens, N.Y. 11101 or to his successor. Mr. Cobham's fax number is (718) 391–8396 and his email address is jcobham@nycboe.net. The student shall make himself or herself available for a guidance conference during the three (3) school days immediately following delivery

of the request. DOE shall notify the student of available placement(s) as promptly as possible, but no later than five (5) school days following its receipt of the request if the DOE determines that no guidance conference is needed, or within three (3) school days following the conference, if the DOE determines that a guidance conference is needed. Any Separated BHS Student who wishes to reregister at BHS must attend a guidance conference prior to reregistering. If the student wishes to enroll in a DOE Summer School for the 2004 summer session, the written request must be delivered on or before 4:00 p.m. on Friday, July 9, 2004 or the student will not be enrolled in the 2004 summer session. If the student desires to enroll in a DOE Evening High School, the written request must be delivered on or before 5:00 p.m. of the tenth school day of the applicable semester, or the student will not be enrolled in such program until the following semester. However, if the student is 21 years old or over and wishes to enroll in a DOE Evening High School, the DOE will make every reasonable effort to make sure that the student is enrolled in an appropriate program during the current semester, even if notice is delivered after ten (10) school days into the semester.

h. Separated BHS Students and Group A LTA Students shall:

Be offered academic intervention services ("AIS"), educationally related support services ("ERSS"), guidance services, and supplemental educational services ("SES"), if eligible for such services. DOE application deadlines for SES services available at BHS shall be waived by the DOE; and

Not be required to make up any physical education credits required by the DOE.

4. The DOE agrees to send a copy of the notice, attached as Appendix A, to all Separated BHS students and Group A LTA students who have not previously been mailed a notice in connection with this litigation.

5. Nothing in this agreement shall preclude DOE from implementing N.Y. Education Law §§ 3202 and 3214.

6. During the Agreement Period, the DOE shall conduct Planning Interviews at BHS in accordance with DOE policy.

a. Planning Interviews are required to be scheduled prior to the time any Current BHS Student is transferred or discharged from BHS in the following situations: (i) a 16 or 17 year old student obtains a full time employment certificate; (ii) a student enrolls in a DOE Evening High School; (iii) a student enrolls in a non-DOE business or trade school or other non-DOE training program; (iv) a student enters military service; (v) a student enrolls in a state approved non-DOE high school equivalency program; (vi) a student enrolls in a part-time DOE GED Program; (vii) a student over compulsory school age voluntarily withdraws from school; (viii) a student over compulsory school age has been absent twenty (20) or more consecutive school days; (ix) a 16 or 17 year old student enrolls in a full-time GED program (ASHS); and (x) a student leaves school due to pregnancy. If the student does not wish to be discharged or transferred, the school cannot transfer or discharge the student, except to the extent permitted by applicable law.

b. Planning Interviews shall include, at a minimum, the following components: (i) a review of the student's credits and progress toward a diploma; (ii) a review of the student's rights for the purpose of explaining those rights to the student and parent; and (iii) consideration of whether additional services and supports (such as

tutoring, ERSS, AIS, ELL services, summer school, guidance services, and counseling) have been or should be provided to help the student stay at BHS, whether transfer to another DOE High School would help the student stay in a regular high school program, and whether a child may have a learning or other disability that suggests a need to make a referral for Section 504 or IDEA services. If, after the Planning Interview, the student does not want to remain at BHS, the student can be discharged or transferred to the extent permitted by applicable law.

c. If, after a Planning Interview, the student wants to transfer to a GED program, a member of the BHS guidance staff must (i) assist the student in identifying appropriate DOE GED Programs or non-DOE GED programs, (ii) contact those programs for the student, and (iii) make every reasonable effort to arrange for admission and registration of the student at a program. In addition, a list of DOE GED Programs and non-DOE GED programs should be provided to the student and/or parent.

d. If, after a Planning Interview, the student wants to transfer to another DOE High School, a member of the BHS guidance staff must explain the transfer process to the student and complete all the steps that BHS must take to complete the transfer.

e. For any student described in subparagraph 6(a), BHS will review the student's behavior and performance to determine whether there is reason to suspect that the student has a disability. If there is reason to suspect a disability, BHS will ensure that a referral for an evaluation is made and that the appropriate procedures for obtaining consent and evaluating the student are followed.

7. No later than forty-five (45) school days after the effective date of this agreement, the DOE shall conduct a training session of the BHS principal, assistant principal of administration, assistant principal of security and the Regional Director of Student Placement, Youth and Family Support Services. No later than September 30, 2004, the DOE shall conduct a training session of BHS assistant principal of guidance, guidance counselors, attendance personnel, and the supervisors of guidance counselors and attendance personnel. The training shall then be conducted once each year thereafter during the Agreement Period from the time of the initial training. The training shall include, but is not limited to, DOE's obligations under this agreement, relevant law and DOE policies and procedures concerning a student's entitlement to attend the City's public schools, including receipt of AIS, ERSS, guidance and SES services, if eligible, and DOE's obligations concerning attendance, pregnant and parenting students, registration, discharge, and transfer of students, students with disabilities, and child find. DOE agrees to allow Plaintiffs' counsel to have input regarding the development of the curricula for and delivery of this training.

8. On a quarterly basis of each year during the Agreement Period beginning September 15, 2004, the DOE shall provide a report to Plaintiffs' counsel containing the following information with respect to the previous three months: (a) the number of students discharged and transferred from BHS, and (b) the reasons for discharge or transfer as indicated by the discharge or transfer code.

9. Defendants agree that Plaintiffs are entitled to counsel fees as though they are prevailing parties and agree not to contest Plaintiffs' entitlement to seek fees under 42 U.S.C. § 1988. The parties agree to

negotiate the amount of fees and, if they are not able to do so within ninety (90) days of the effective date of this agreement, Plaintiffs may submit an application for counsel fees to the Court, to which Defendants shall have an appropriate opportunity to respond consistent with this paragraph.

10. Nothing in this agreement impairs any rights or claims that any named Plaintiff or purported class member may have against the DOE arising from the alleged incidents asserted in the *RV Action*. This includes any alleged right or claim to seek money damages and/or compensatory educational services, including but not limited to those sought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.*, or the Rehabilitation Act, 29 U.S.C. § 794. Nothing in this agreement impairs the right of any Current BHS Student, Group A LTA Student, Group B LTA Student, or Separated BHS Student or their parents or legal guardians to seek a disability evaluation, guidance evaluation, or due process hearing, as permitted by law. Nothing in this agreement impairs any rights or defenses that the Defendants may have with respect to any claim made or allegation asserted by any named Plaintiff, or by any purported class member, in this action or in any subsequent action, hearing, or proceeding.

11. Nothing in this agreement is an admission of liability by DOE or any of the Defendants. Nor shall it have precedential value with respect to any obligation of the City of New York, DOE, or the Defendants. This agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiation, except with regard to an action to enforce the terms of the agreement. This agreement, however, may be raised by a Current BHS Student or Separated BHS Student during any meeting with the DOE for the purpose of obtaining the benefit of any provision of the agreement. Nothing herein shall be deemed evidence of a policy or practice of the City of New York or DOE. Nothing in the agreement shall be deemed evidence of any wrongful act or omission of the City of New York, DOE, or any of the Defendants in their individual or official capacities.

12. Nothing herein shall be interpreted as requiring the DOE to keep open BHS through the end of the Agreement Period or be interpreted to require DOE to change or modify any current or future plans for closing BHS, including plans which result in reducing the availability of courses at BHS.

13. This agreement contains all the terms agreed to by the parties. It can only be changed by subsequent written agreement of the parties or by order of the Court entered following application by the Plaintiffs or Defendants.

14. The parties consent to the jurisdiction of the Court to adjudicate any dispute or controversy between the parties concerning the terms and conditions of this agreement.

15. This agreement is intended to establish procedures, practices, and remedial relief that will, in whole or in part, benefit Separated BHS Students, Current BHS Students, Group A LTA Students, and Group B LTA Students (hereinafter referred to as "intended beneficiaries").

a. Where a provision of the agreement specifically references a sub-group of students for whom relief is to apply, only the referenced group(s) shall be deemed to be the intended beneficiary of the relief provided for by the respective provision.

b. Where a provision is silent as to the specific sub-group of students for whom relief is to apply, the provision shall be enforceable by Separated BHS Students,

Current BHS Students, Group A LTA Students, and Group B LTA Students.

c. The named plaintiff is an intended beneficiary of each of the provisions of the Settlement Agreement and may enforce all provisions.

16. Should an intended beneficiary, including but not limited to the named plaintiff, believe the Defendants have not substantially complied with the terms of this Settlement Agreement, he or she may seek to enforce the allegedly breached provision of the agreement in the Court seeking relief, including specific performance of the allegedly breached provision. The intended beneficiary shall, directly or through counsel, notify Defendants' counsel and the Chancellor of the DOE in writing at least ten (10) school days before seeking the Court's assistance or intervention. In the event that the student seeking the Court's assistance or intervention has been excluded from school, and has been unable to register for school and attend classes under the procedures in paragraph 3 of this agreement, written notice must be made to Defendants' counsel and the Chancellor of the DOE three (3) school days prior to the time the student seeks the Court's intervention or assistance. Whether or not the student has been excluded from school, the intended beneficiary shall apprise Defendants' counsel and the Chancellor of the DOE of the factual basis of his or her dispute and provide copies of all documents on which he or she is relying, to the extent known at the time, at the same time that notice of intention to seek judicial assistance or intervention is provided. As soon as possible after notice is provided pursuant to this paragraph, the parties or their representatives shall meet to discuss the basis for the request for relief and possible solutions that would obviate the need for judicial intervention or assistance.

Should the parties be unable to meet before the notice period expires, the meeting requirement may be dispensed with and the intended beneficiary may seek the Court's assistance or intervention without first meeting with Defendants.

17. Intended beneficiaries shall be entitled to seek an award of attorneys' fees, costs, and disbursements associated with work performed in pursuing and prevailing in judicial enforcement of the terms of this agreement under the same terms and conditions as such fees and costs are available under 42 U.S.C. § 1988 for post-judgment enforcement work. The parties agree to negotiate the amount of fees and, if they are not able to do so within 90 (ninety) days of the date that Plaintiffs' counsel informs Defendants' counsel of their fee request, Plaintiffs may submit an application for counsel fees to the Court, to which Defendants shall have an appropriate opportunity to respond consistent with this paragraph.

18. Notwithstanding the provisions of this agreement, nothing shall prevent the Defendants from modifying, changing, or otherwise altering or amending their policies and/or procedures if required by intervening changes in federal and/or state law, regulation, and/or court order which are inconsistent with the terms of this agreement. The Defendants shall provide Plaintiffs' counsel with notice of any change at least twenty (20) school days prior to the commencement of implementation, unless the Defendants are required to commence implementation of such change in less than twenty (20) school days, in which case, Defendants' counsel shall provide such notice no later than five (5) school days after learning thereof.

19. The terms and conditions of this agreement shall be deemed to become effective and the parties' obligations, rights, and responsibilities shall commence upon

the signing of the Order of Discontinuance and shall continue until June 30, 2006, at which time this agreement shall terminate of its own accord. However, paragraph 3(f) shall continue in effect until June 30, 2008 with respect to any Separated BHS Student or Group A LTA Student who is enrolled as of June 30, 2006, in a DOE GED Program, DOE Adult Education Program, or DOE Evening High School, provided that the student is making progress toward the diploma sought as described in paragraph 3(f) of this agreement.

## APPENDIX B

### AGREEMENT

**WHEREAS,** plaintiff Gabriel Ruiz commenced a lawsuit entitled *Ruiz v. Pedota,* filed on January 30, 2003, in the United States District Court for the Eastern District of New York, Docket No. 03–CV–502 (the *"Ruiz Action"*), alleging that defendants Paul Pedota, former Principal of Franklin K. Lane High School ("FKL"), John W. Lee, former Superintendent of Queens High School Superintendency, Norman Cohn, former Principal of FKL, Joel Klein, Chancellor of the New York City school system, the New York City Department of Education, and the New York City Board of Education (collectively, the "Defendants") violated federal and state law by denying plaintiff Ruiz educational services and excluding him from credit-bearing classes at FKL; and

**WHEREAS,** plaintiffs KW, VT, Jamaar St. Hillaire, Nasonna Pieters, Fallon Negron, Crystal Moran, Christina Melendez, AM, Abdiel Julio, Curt James, Carlos Infante, Miryan Indarte, Jessenia Herrera, Arenya Harris, AG, Haydee Garcia, Daniel Espinal, ND, Jessica Caban, Abigail Badillo, Louis Abraham, and Gabriel Ruiz filed a First Amended Complaint on March 27, 2003, alleging that Defendants violated federal and state law by denying the plaintiffs educational services, excluding them from credit-bearing classes at FKL, and transferring them illegally; and

**WHEREAS,** plaintiffs Gabriel Ruiz, by and through his mother, Ana J. Nova; Louis M. Abraham; Abigail Badillo; Jessica Caban, by and through her mother, Cruz Ramos; ND; Daniel Espinal; Mylene Figueroa, by and through her mother, Nancy Rivera; Haydee Garcia; AG; Arenya Harris; Jessenia Herrera, by and through her mother, Ledy Gonzalez; Miryan Indarte; Carlos Infante; Curt James; YJ, by and through his mother, ER; Abdiel Julio; AM; Christina Melendez, by and through her mother, Lucelina Torres; Michael Montes, by and through his mother, Sara Minero; Crystal Moran; Fallon Negron; Nasonna Pieters; Frances D. Rivera, by and through her mother, Diana Ramos Piniero; Jamaar St. Hillaire; VT, by and through her mother, NM; and KW ("Plaintiffs"), filed a Second Amended Complaint (incorrectly titled Amended Complaint) on March 28, 2003, alleging that Defendants violated federal and state law by denying Plaintiffs educational services, excluding them from credit-bearing classes at FKL, and transferring them illegally; and

**WHEREAS,** Defendants have denied any and all liability arising out of Plaintiffs' allegations; and

**WHEREAS,** the parties now desire to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability;

**IT IS AGREED AMONG THE PARTIES AS FOLLOWS:**

1. The effective date of this agreement is the date of entry of an Order of Discontinuance without prejudice of the *Ruiz Action.*

2. Definitions.

a. Agreement Period: The period from the effective date of this agreement to and including June 30, 2006. Notwithstanding this definition, certain portions of this agreement may survive beyond June 30, 2006, as specified in paragraph 21 of this agreement.

b. The designation "LTA" applies to a student who is absent from school for twenty (20) consecutive school days.

   (i) Group A LTA Student: A student who was registered for FKL and designated as a long-term absence at any point from January 30, 2003, to the effective date of this agreement.

   (ii) Group B LTA Student. A student who is registered for FKL and designated as a long-term absence at any point during the Agreement Period.

c. Separated FKL Student. Any student who was discharged or transferred from FKL's register during the period from January 1, 2000, to the effective date of this agreement. The definition of Separated FKL Student does not include any student who (i) transferred from FKL to any other DOE High School when the transfer was completed within five (5) school days, (ii) transferred to any private or parochial school, (iii) moved outside the City of New York ("City"), or (iv) entered military service.

d. Current FKL Student. A student who is on the register at FKL during the Agreement Period.

e. DOE means the New York City Department of Education, the New York City Board of Education, Joel Klein, in his official capacity as Chancellor of the New York City school system, and any successor Chancellor of the New York City school system in his or her official capacity.

f. DOE High School: A secondary school operated by the DOE that provides students in grades 9 through 12 a program of instruction with the opportunity to meet all the requirements for and receive a Regents or, if eligible, Local High School Diploma. This term includes alternative high schools, provided they award Regents or Local Diplomas.

g. DOE GED Program: A program operated by the DOE providing instruction to assist students in preparation for a state high school equivalency diploma ("GED"), as provided by 8 N.Y.C.R.R. Part 100.

h. DOE Adult Education Program: A DOE educational program that provides instruction to individuals over the age of 21 in preparation for a GED.

i. DOE Evening High School: A DOE educational program that offers eligible students under the age of 21, as well as certain Separated FKL Students over the age of 21, the opportunity to take high school credit-bearing classes and the examinations needed to obtain a Regents Diploma and/or if applicable, a Local High School Diploma.

3. Admission to a DOE High School, DOE GED Program, DOE Adult Education Program, or DOE Evening High School.

a. Any student who has been discharged or transferred from FKL and is under the age of 21, including but not limited to any Separated FKL Student, shall be allowed to register for and attend classes at FKL, by the end of the second school day following DOE's receipt of notification of the student's request to register and/or

attend classes. Notification may be made in writing, by letter, fax, or e-mail, to Frank Barrone, Principal, Franklin K. Lane High School, 999 Jamaica Avenue, Brooklyn, N.Y. 11208, or to the current acting FKL Principal. Principal Barone's fax number is (718) 235–4877 and his email address is FBarone@nyc-boe.net. Notification may also be made in person at FKL. A Group A LTA Student must be provided a program card and access to classes within two (2) school days of the student's notification of the student's desire to attend classes as specified in this paragraph.

b.  Separated FKL Students under the age of 21 who do not wish to reregister at FKL and Group A LTA Students under the age of 21 who do not wish to attend classes at FKL, may register for a DOE High School other than FKL pursuant to the procedures set forth in subparagraph 3(f) of this agreement.

c.  Separated FKL Students and Group A LTA Students under the age of 21 who do not wish to register for or attend classes at a DOE High School have the option of registering for a DOE GED Program, pursuant to the procedures set forth in subparagraph 3(f) of this agreement.

d.  Current FKL Students, Separated FKL Students, and Group A LTA Students over the age of 17 who are eligible may voluntarily elect to register for the DOE Adult Education Program or DOE Evening High School, pursuant to the procedures set forth in subparagraph 3(f) of this agreement. Such students retain their right to attend the New York City public schools pursuant to N.Y. Education Law § 3202.

e.  Separated FKL Students and Group A LTA Students who are 21 years or older at the time they request readmission or who turn 21 prior to obtaining a diploma shall be permitted to register in their choice of a DOE GED Program, DOE Adult Education Program, or DOE Evening High School, pursuant to the procedures set forth in subparagraph 3(f) of this agreement. The student will be given the option of obtaining a GED, Regents Diploma, or, if applicable, Local High School Diploma, at no cost to the student. Such student shall be permitted to take the courses and examinations needed to obtain the diploma sought and may continue to attend such program until June 30, 2008 or until the student obtains a diploma, whichever comes first, provided the student is making progress toward the diploma sought. If the student is seeking a Regents Diploma or Local High School Diploma, the student may take up to six credit-bearing courses per semester. In addition, during the Agreement Period, the student shall be permitted to attend the Young Adult Success Center implemented pursuant to paragraph 11 of this agreement or access to similar available services at a more convenient location as provided in paragraph 11 of this agreement.

f.  To register for any of the programs outlined in subparagraphs 3(b), 3(c), 3(d), and 3(e) of this agreement, Current FKL Students, Separated FKL Students, or Group A LTA Students must deliver a written request providing the student's name, home address, telephone number, date of birth, name and dates of last educational program

attended, and the name(s) of each DOE High School, DOE GED Program, DOE Adult Education Program, and DOE Evening High School for which enrollment is sought, in order of preference if more than one is listed. If the student seeks to enroll for a future semester, the student must also indicate the semester for which enrollment is sought. The written request must be delivered, faxed, or e-mailed to Marjorie A. Elliott, Regional Director of Student Placement, Youth and Family Support Services, Region 5 Learning Support Center, Department of Education, 82-01 Rockaway Boulevard, Ozone Park, N.Y. 11416, or to her successor. Ms. Elliott's fax number is (718) 642-5707 and her email address is MElliot@nycboe.net. If a guidance conference is needed to place the student, the student shall make himself or herself available during the three (3) school days following delivery of the request. DOE shall notify the student of available placements as promptly as possible but no later than five (5) school days following its receipt of the request if no guidance conference is needed, or within three (3) school days following the conference, if one is needed. If the student desires to enroll in a DOE Evening High School, the written request must be delivered on or before 5:00 p.m. of the tenth school day of the applicable semester, or the student will not be enrolled in such program until the following semester. However, if the student is 21 years old or over, the DOE will make every reasonable effort to make sure that the student is enrolled in an appropriate program during the current semester, even if notice is delivered after ten (10) school days into the semester.

g. Separated FKL Students and Group A LTA Students shall:

(i) Be provided preference in admission to classes necessary for high school graduation;

(ii) Be provided, upon timely application after notice, priority access to evening and summer school programs. DOE eligibility requirements for these programs shall be waived by the DOE;

(iii) Be offered academic intervention services ("AIS"), educationally related support services ("ERSS"), guidance services, and supplemental educational services ("SES"), if eligible for such services. DOE application deadlines for SES services available at FKL shall be waived by the DOE; and

(iv) Not be required to make up any physical education credits required by the DOE.

4. During the Agreement Period:

a. The Notice attached as Appendix A will be disseminated as follows:

(i) To Current FKL Students for whom a Form 407 tracking procedures have been initiated, at the time when the first written communication to the student and/or parent regarding the student's attendance;

(ii) To Current FKL Students at Planning Interviews; and

(iii) To Current FKL Students who are transferred or discharged for any reason.

(iv) The Notice shall be provided in English or the home language of the student that is contained in the DOE's records. If the home language of the student is other than

English, Spanish, or Bengali, FKL shall have ten (10) school days to comply with subparagraphs 4(a)(ii) and (iii).

b. At the beginning of each school year, the DOE shall mail to Current FKL Students a notice advising them of the availability of and eligibility requirements for AIS, ERSS, and guidance services at FKL, and information on how to access those services. Each Current FKL Student who is eligible for and has requested access to any of these services will be assigned to a guidance counselor who is responsible for coordinating the implementation of requested services for which the student is eligible.

c. A Current FKL Student who is under compulsory school age may not transfer to a GED program, unless the program meets the criteria set forth in 8 N.Y.C.R.R. Part 100.

d. Every Current FKL Student and Separated FKL Student has the right to attend school full-time until he or she receives a regular high school diploma or until the end of the school year in which he or she turns 21, whichever comes first. This includes the right to take classes that prepare the student to earn credits for high school graduation and to take the examinations needed to obtain a Regents High School Diploma, and/or, if applicable, a Local High School Diploma.

e. Every Current FKL Student and Separated FKL Student has the right to refuse to be transferred to a GED program or any alternative program that does not provide the opportunity to earn credits toward a high school diploma.

f. No Current FKL Student or Separated FKL Student will be given a program card that says "GED."

g. No Current FKL Student or Separated FKL Student will be prohibited from registering for and attending classes because the student has not attended a guidance counselor meeting, unless the meeting is needed to create a program for the student.

h. No Current FKL Student shall be transferred or discharged from FKL to another DOE High School, DOE GED Program, DOE Adult Education Program, DOE Evening High School, or non-DOE GED program unless FKL confirms that the student has registered at and started attending the receiving program. Such student shall be permitted to remain at FKL unless the transfer was made pursuant to N.Y. Education Law § 3214.

i. No Current FKL Student or Separated FKL Student who is entitled to receive a free public education in the New York City public schools under New York State law will be prevented from registering for school or attending classes, or suspended from school, solely due to age (unless the student is over 21 [but see ¶ 3(e) supra] ), lack of credits, truancy, cutting classes, irregular attendance, poor grades, or failure to pass examinations needed to obtain a high school diploma. If any provision of this sub-paragraph is inconsistent with any DOE directive or policy, the terms of this sub-paragraph shall prevail.

j. If an involuntary transfer of a Current FKL Student or Separated FKL Student is initiated as provided in N.Y. Education Law § 3214, the student shall be afforded the procedural protections set forth in N.Y. Education Law § 3214(5) and DOE Chan-

cellor's Regulation A–450, or any succeeding Chancellor's regulation.

k. Every Separated FKL Student with a disability and every Current FKL Student with a disability, who may be discharged or transferred from FKL, and their parents, are to be afforded all of the rights they have under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.,* the Rehabilitation Act, 29 U.S.C. § 794, and N.Y. Education Law § 4401, *et seq.,* with regard to the discharge or transfer of the student. Nothing in this agreement impairs any student's rights under these statutes.

l. Any Current FKL Student or Separated FKL Student who requires less than a full-time course load to complete the credits needed for high school graduation shall be permitted to attend a shortened school day at FKL and provided with a program that consists of the requisite classes as available in FKL's schedule.

5. Nothing in this agreement shall preclude DOE from implementing N.Y. Education Law §§ 3202 and 3214.

6. The DOE shall adopt and carry out procedures for holding Planning Interviews at FKL during the Agreement Period. These Planning Interviews do not supplant FKL's existing obligations to provide guidance and other services.

a. Planning Interviews are required to be scheduled prior to the time any Current FKL Student is transferred or discharged from FKL in the following situations: (i) a 16 or 17 year old student obtains a full time employment certificate; (ii) a student enrolls in a DOE Evening High School; (iii) a student enrolls in a non-DOE business or trade school or other non-DOE training program; (iv) a student enters military service; (v) a student enrolls in a state approved non-DOE high school equivalency program; (vi) a student enrolls in a part-time DOE GED Program; (vii) a student over compulsory school age voluntarily withdraws from school; (viii) a student over compulsory school age has been absent twenty (20) consecutive school days; (ix) a 16 or 17 year old student enrolls in a full-time GED program (ASHS); and (x) a student leaves school due to pregnancy. If the student does not wish to be discharged or transferred, the school cannot transfer or discharge the student, except to the extent permitted by applicable law.

b. Planning Interviews shall include, at a minimum, the following components: (i) written invitation, sent at least five (5) days prior to the Planning Interview, to the parent and student; (ii) a notice of student rights, in the form attached hereto as Exhibit A, must be included in the written invitation and at the Planning Interview; (iii) a review of the student's credits and progress toward a diploma; (iv) a review of the student rights form for the purpose of explaining those rights to the student and parent; and (v) consideration of whether additional services and supports (such as tutoring, ERSS, AIS, ELL services, summer school, guidance services, and counseling) have been or should be provided to help the student stay at FKL, whether transfer to another DOE High School would help the student stay in a regular high school program, and whether a child may have a learning or other disability that suggests a need to make a referral for Section 504 or IDEA services. If, after the Planning Interview, the student does not want to remain at FKL, the stu-

dent can be discharged or transferred to the extent permitted by applicable law. At the Planning Interview, a copy of the notice of settlement of the *Ruiz Action* shall be provided to student.

c. If, after a Planning Interview, the student wants to transfer to a GED program, a member of the FKL guidance staff must (i) assist the student in identifying appropriate DOE GED Programs or non-DOE GED programs, (ii) contact those programs for the student, and (iii) make every reasonable effort to arrange for admission and registration of the student at a program. In addition, a list of DOE GED Programs and non-DOE GED programs should be provided to the student and/or parent.

d. If, after a Planning Interview, the student wants to transfer to another DOE High School, a member of the FKL guidance staff must explain the transfer process to the student and complete all the steps that FKL must take to complete the transfer.

e. For any student described in subparagraph 6(a), FKL will review the student's behavior and performance to determine whether there is reason to suspect that the student has a disability. If there is reason to suspect a disability, FKL will ensure that a referral for an evaluation is made and that the appropriate procedures for obtaining consent and evaluating the student are followed.

f. The Regional Director of Student Placement, Youth and Family Support Services, for Region 5 ("Regional Director") will review all transfers and discharges of Current FKL Students during the Agreement Period, including those who require Planning Interviews, to ensure that transfers and discharges are properly done in accordance with law and this agreement.

7. During the Agreement Period, on a quarterly basis, DOE shall provide Plaintiffs' counsel with redacted copies of all Planning Interview forms, with all attachments thereto, for Current FKL Students, as well as reports concerning (a) Current FKL Students who have been discharged or transferred from FKL; (b) Current FKL Students designated LTA; and (c) the provision of AIS, ERSS, SES and guidance services at FKL. The information provided by the DOE shall not contain personally identifiable information concerning the students, their parents, or their families. The information provided will include the number of students discharged and transferred, the reasons for discharge or transfer broken down by code, the month and year of the discharged or transferred student's birth, the number of credits earned by the students as of the date of discharge or transfer, the number of students discharged or transferred who have been designated as ELL students, and the number of students discharged or transferred who have been designated as students with disabilities. With respect to Code 00 transfers, the DOE shall provide the aggregate number and ages of students transferred to a DOE GED Program.

8. Upon Plaintiffs' counsel's request, counsel for the parties shall meet to discuss the reports issued pursuant to ¶ 7 of this agreement within fifteen (15) school days of their delivery to Plaintiffs' counsel.

9. No later than thirty (30) school days after the effective date of this agreement, and once each year thereafter during the Agreement Period from the time of the initial training, the DOE shall conduct a training session of all Regional Staff in Region 5, including the Regional Director,

and FKL administrative and student support staff, including but not limited to the FKL principal, assistant principal of guidance, guidance counselors, attendance personnel, and supervisors of guidance counselors and attendance personnel. The training shall include, but is not limited to, DOE's obligations under this agreement, relevant law and DOE policies and procedures concerning a student's entitlement to attend the City's public schools, including receipt of AIS, ERSS, guidance and SES services, if eligible, and DOE's obligations concerning attendance, registration, discharge, and transfer of students, students with disabilities, and child find. DOE agrees to allow Plaintiffs' counsel to have input regarding the development of the curricula for and delivery of this training.

10. Within ten (10) school days of the effective date of this agreement, the DOE shall send the notice attached as Exhibit B to the Principal of each DOE High School, other than FKL, and the director of each DOE GED Program where a Separated FKL Student is registered as of the effective date of this agreement.

11. Within thirty (30) school days of the effective date of this agreement, Defendants shall implement a Young Adult Success Center in conjunction with Cypress Hills Services Center or a similar organization to assist any Current FKL Student or Separated FKL Student. Services at the Cypress Hills Services Center shall be available for at least twelve (12) hours weekly. To the extent a Separated FKL Student is attending a school or program other than FKL and that student does not wish or is unable to access the services provided by the Young Adult Success Center, the DOE shall make every reasonable effort to provide the student with access to similar services at a more convenient location, provided that such services and locations are available.

12. Defendants agree that Plaintiffs are entitled to counsel fees as though they are prevailing parties and agree not to contest Plaintiffs' entitlement to seek fees under 42 U.S.C. § 1988. The parties agree to negotiate the amount of fees and, if they are not able to do so within ninety (90) days of the effective date of this agreement, Plaintiffs may submit an application for counsel fees to the United States District Court for the Eastern District of New York, to which Defendants shall have an appropriate opportunity to respond consistent with this paragraph.

13. Nothing in this agreement is an admission of liability by DOE or any of the Defendants. Nor shall it have precedential value with respect to any obligation of the City of New York, DOE, or the Defendants. This agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiation, except with regard to an action to enforce the terms of the agreement. This agreement, however, may be raised by a Current FKL Student or Separated FKL Student during any meeting with the DOE for the purpose of obtaining the benefit of any provision of the agreement. Nothing herein shall be deemed evidence of a policy or practice of the City of New York or DOE. Nothing in the agreement shall be deemed evidence of any wrongful act or omission of the City of New York, DOE, or any of the Defendants in their individual or official capacities.

14. Nothing in this agreement impairs any rights or claims that any named Plaintiff or purported class member may have against the DOE arising from the alleged incidents asserted in the *Ruiz Action* This includes any alleged right or claim to seek money damages and/or compensatory educational services, including but not limited to those sought under the Individuals with

Disabilities Education Act, 20 U.S.C. § 1401, *et seq.*, or the Rehabilitation Act, 29 U.S.C. § 794. Nothing in this agreement impairs the right of any Current FKL Student, Group A LTA Student, Group B LTA Student, or Separated FKL Student or their parents or legal guardians to seek a disability evaluation, guidance evaluation, or due process hearing, as permitted by law. The statute of limitations on such claims shall be tolled during the period from January 1, 2003, to effective date of this agreement. Nothing in this agreement impairs any rights or defenses that the Defendants may have with respect to any claim made or allegation asserted by any named Plaintiff, or by any purported class member, in this action or in any subsequent action, hearing, or proceeding.

15. This agreement contains all the terms agreed to by the parties. It can only be changed by subsequent written agreement of the parties or by order of the Court entered following application by the Plaintiffs or Defendants.

16. The parties consent to the jurisdiction of the United States District Court for the Eastern District of New York to adjudicate any dispute or controversy between the parties concerning the terms and conditions of this agreement.

17. This agreement is intended to establish procedures, practices, and remedial relief that will, in whole or in part, benefit Separated FKL Students, Current FKL Students, Group A LTA Students, and Group B LTA Students (hereinafter referred to as "intended beneficiaries"). Parents of students age 17 and under and parents of certain disabled students under age 21 may be entitled to certain notices and procedures under the agreement.

a. Where a provision of the agreement specifically references a sub-group of students for whom relief is to apply, only the referenced group(s) shall be deemed to be the intended beneficiary of the relief provided for by the respective provision.

b. Where a provision is silent as to the specific sub-group of students for whom relief is to apply, the provision shall be enforceable by Separated FKL Students, Current FKL Students, Group A LTA Students, and Group B LTA Students.

c. Each of the named plaintiffs is an intended beneficiary of each of the provisions of the Settlement Agreement and may enforce all provisions.

18. Should an intended beneficiary, including but not limited to the named plaintiffs, believe the Defendants have not substantially complied with the terms of this Settlement Agreement, he or she may seek to enforce the allegedly breached provision of the agreement in the United States District Court for the Eastern District of New York seeking relief, including specific performance of the allegedly breached provision. The intended beneficiary shall, directly or through counsel, notify Defendants' counsel and the Chancellor of the DOE in writing at least ten (10) school days before seeking the Court's assistance or intervention. In the event that the student seeking the Court's assistance or intervention has been excluded from school, and has been unable to register for school and attend classes under the procedures in paragraph 3 of this agreement, written notice must be made to Defendants' counsel and the Chancellor of the DOE three (3) school days prior to the time the student seeks the Court's intervention or assistance. The intended beneficiary shall apprise Defendants' counsel of the factual basis of his or her dispute and provide copies of all documents on which he or she is relying, to the extent known at the time, at the same time that notice of

intention to seek judicial assistance or intervention is provided. As soon as possible after notice is provided pursuant to this paragraph, the parties or their representatives shall meet to discuss the basis for the request for relief and possible solutions that would obviate the need for judicial intervention or assistance. Should the parties be unable to meet before the notice period expires, the meeting requirement may be dispensed with and the intended beneficiary may seeks the Court's assistance or intervention without first meeting with Defendants.

19. Intended beneficiaries shall be entitled to seek an award of attorneys' fees, costs, and disbursements associated with work performed in pursuing and prevailing in judicial enforcement of the terms of this agreement under the same terms and conditions as such fees and costs are available under 42 U.S.C. § 1988 for post-judgment enforcement work.

20. Notwithstanding the provisions of this agreement, nothing shall prevent the Defendants from modifying, changing, or otherwise altering or amending their policies and/or procedures if required by intervening changes in federal and/or state law, regulation, and/or court order which are inconsistent with the terms of this agreement. The Defendants shall provide Plaintiffs' counsel with notice of any change at least twenty (20) school days prior to the commencement of implementation, unless the Defendants are required to commence implementation of such change in less that twenty (20) school days, in which case, Defendants' counsel shall provide such notice no later than five (5) school days after learning thereof.

21. The terms and conditions of this agreement shall be deemed to become effective and the parties' obligations, rights, and responsibilities shall commence upon the signing of the Order of Discontinuance and shall continue until June 30, 2006, at which time this agreement shall terminate of its own accord. However, paragraphs 2, 3(e) and 13 through 20 of this agreement shall continue in effect until June 30, 2008 with respect to any Separated FKL Student or Group A LTA Student as described in paragraph 3(e) of this agreement, who is enrolled as of June 30, 2006, in a DOE GED Program, DOE Adult Education Program, or DOE Evening High School, provided that the student is making progress toward the diploma sought. Nonetheless, this agreement shall not become effective if the Order of Discontinuance entered in the above-captioned action does not include a provision under which the United States District Court for the Eastern District of New York retains jurisdiction with respect to the enforcement of this agreement. The parties agree to submit to the Court a proposed Order of Discontinuance within ten (10) business days of the date of execution of this Agreement.

January 6, 2004.